IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL EDWIN SMITH, individual, )
)
    Plaintiff, )
)
        v. ) No. 17-CV-90-KEW
)
)
BOARD OF COUNTY COMMISSIONERS, )
MUSKOGEE COUNTY; )
)
CHARLES PEARSON, SHERIFF OF MUSKOGEE )
COUNTY, in his Individual and Official Capacities; )
)
ROB FRAZIER, SHERIFF OF MUSKOGEE )
COUNTY, in his Official Capacities; )
)
DOE HEALTHCARE CORPORATION; )
)
DOES I through XX; )
)
    Defendants. )

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

## COMPLAINT

**COMES NOW** the Plaintiff**,** MICHAEL EDWIN SMITH ("Plaintiff/Smith"), by and through attorneys of record, and for his causes of action against the Defendants, alleges and states:

### INTRODUCTORY STATEMENT

1. Smith is a fifty (50) year old African American male.

2. In about 2012, Smith was diagnosed with cancer that originated in his prostate and metastasized spreading to his spine and pelvic bone causing him to undergo intensive and aggressive radiation and other cancer treatments.

3. On March 15, 2016, Smith was arrested at Wal-Mart for Obtaining Merchandise By False Pretenses and was jailed at Muskogee County Jail.

1

4. As detailed herein, Smith was subjected to grossly deficient medical treatment amounting to deliberate indifference to his serious medical needs because jail and medical staff at Muskogee County Jail disregarded known and substantial risks to his health and safety, causing him to suffer unnecessarily and become paralyzed due to utterly inadequate care provided to inmates at Muskogee County Jail.

5. While in jail, Smith began to suffer severe pain in his back and chest, numbness and a frost -bite like feeling in his chest that spread down to his feet.

6. This numbness eventually progressed into a loss of feeling from his chest down causing him permanent paralysis and quadriplegia.

7. Smith notified the jail and medical staff of his cancer history, symptoms and worsening health and urged the jail and medical staff to take him to the hospital.

8. The jail and medical staff neglected, failed and refused to take Smith to the hospital and deprived him of necessary and urgent medical care and treatment resulting in him becoming a quadriplegic.

9. Instead, the jail and medical staff told Smith that he was "faking it" and treated him inhumanely by refusing to assist him with showering, bathing, going to the bathroom, eating, or other necessary assistance, causing him to wallow in his own feces and urine.

10. On about April 2, 2016, Smith was finally able to bond out of jail and sought immediate treatment and was admitted to St. Francis Health System for over thirty (30) days.

11. By this time, it was too late and Smith's paralysis was permanent.

12. Further, Smith has verified with medical professionals that had he received proper medical care and treatment, and been taken to the hospital when he requested and demanded, his paralysis could have been prevented and he would not be paralyzed today.

13. Smith continues to suffer from quadriplegia and other serious medical complications caused by the Defendant's wrongful conduct causing extensive hospitalization.

14. Smith suffers daily and his quality of life has been shattered forever because of the Defendants' wrongful conduct.

15. Jail and medical staff, including those employed by **Doe Healthcare Corporation (DHCO)** were clearly on notice of Smith's acute, serious and deteriorating medical condition. However, Defendants disregarded the known and obvious risks associated with his deteriorating medical condition that led to his permanent paralysis and quadriplegia. Consistent with established polices, customs, patterns, and/or practices, Defendants failed to provided Smith with adequate and timely medical treatment and care and failed to take other measures to protect him, in deliberate indifference to Smith's serious medical needs, health and safety.

## JURISDICTION AND VENUE

16. The jurisdiction of this court is invoked pursuant to 28 U.S.C. Section 1343 to secure protection of and to redress deprivations of rights secured by the Eighth Amendment and Fourteenth Amendment as enforced by 42 U.S.C. Section 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

17. The jurisdiction of this court is also invoked under 28 U.S.C. Section 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983.

18. This court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. Section 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

19. Venue is proper under 28 USC Section 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

20. Plaintiff is a resident of Muskogee County, Oklahoma and these actions are based on violations of his rights under the Eighth and/or Fourteenth Amendments and Oklahoma Constitution and State law.

21. Defendant, Board of County Commissioners of Muskogee County, a political subdivision is the board and governing body responsible for funding, operation, maintenance, and health and safety of inmates like Plaintiff while housed at the Muskogee County Jail, oversight and supervision of the Muskogee County Sheriff in performing his duties, and is liable for the actions of its county personnel, agents and employees.

22. Defendant Charles Pearson (Sheriff Pearson or Defendant Pearson) is, and was at all times relevant hereto, Sheriff of Muskogee County, Oklahoma, residing in Muskogee County, Oklahoma. Defendant Pearson, as former Sheriff and head of the Muskogee County Sheriff's Department, was at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Muskogee County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. Section 47. In addition, Defendant Pearson is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the

4

Muskogee County Sheriffs Department and Muskogee County Jail, including the policies, practices, procedures, and or customs that violated Smith's rights as set forth in this Complaint. Defendant Pearson is sued in his individual and official capacities.

23. Defendant Rob Frazier (Sheriff Frazier or Defendant Frazier) is, and was at all times relevant hereto, Sheriff of Muskogee County, Oklahoma, residing in Muskogee County, Oklahoma. Defendant Frazier, as current Sheriff and head of the Muskogee County Sheriff's Department, was at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Muskogee County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. Section 47. In addition, Defendant Frazier is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Muskogee County Sheriffs Department and Muskogee County Jail, including the policies, practices, procedures, and or customs that violated Smith's rights as set forth in this Complaint. Defendant Frazier is sued in his official capacity.

24. Defendant Doe Healthcare Corporation (DHCO) is a corporation doing business in Muskogee County, Oklahoma. DHCO was at all times relevant hereto responsible, in part, for providing medical services and medication to Smith while he was in the custody of the Sheriff's Department. DHCO was additionally responsible, in part, for implementing Muskogee County Jail policies regarding medical treatment, assisting in developing those policies and in training and supervising its employees.

25. The true names and identities of Defendant DOES I through XX are presently unknown to plaintiff as jail and medical staff (including but not limited to detention officers,

physicians, nurses, etc.). Plaintiff alleges that each of defendants DOES I through XX was employed by the Muskogee County Sheriffs Department and\or DHCO.

26. Plaintiff alleges that the Defendants were deliberately indifferent to Smith's medical needs and safety, failed to provide necessary medical care to him or to take other measures to prevent his health condition from worsening, violated his civil rights, negligently and wrongfully caused his death, and\or encouraged, directed, enabled and\or ordered other Defendants to engage in such conduct.

## FACTUAL ALLEGATIONS

27. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26, as though fully set forth herein.

28. Smith is a fifty (50) year old, African American male.

29. In about November/December 2012, Smith was diagnosed with stage four (4) cancer.

30. The cancer originated in Smith's prostate and metastasized spreading to his spine and pelvic bone.

31. Before March 15, 2016, Smith received intensive cancer care and treatment for about the last 4 years since his diagnosis, including two radiation treatments to his pelvic bone and one radiation treatment to his spine.

32. On about March 15, 2016, Smith was arrested for obtaining merchandise by bogus check at Wal-Mart.

33. Smith has entered a plea of not guilty to the charges.

34. Smith was immediately transported and jailed at the Muskogee County Jail.

35. Smith was mobile and physically active at the time he was arrested.

36. Smith's cancer diagnosis and treatment is thoroughly documented in his medical history.

37. Smith also notified the jail and medical staff when he was booked into jail that he had been diagnosed and received treatment for stage four (4) cancer and of his necessary medications.
38. Shortly after his arrest and jailing, Smith began to suffer severe pain in his back and chest, numbness and a frost-bite like feeling in his chest that was spreading down to his feet.
39. Smith notified the jail and medical staff of his symptoms and worsening health condition and that he thought he was becoming paralyzed.
40. Smith also told the jail and medical staff that he believed his worsening condition was related to his cancer.
41. Smith made repeated demands begging and urging the jail and medical staff to take him to the hospital [because of his cancer and health history], the severity and worsening nature of his symptoms and condition.
42. The jail and medical staff neglected, failed and refused to take Smith to the hospital and deprived him of necessary and urgent medical care and treatment.
43. Further, Smith was deprived of adequate phone communications with his family or others [outside of the jail] while he was suffering and his condition continued to worsen.
44. Instead, the jail and medical staff told Smith that he was "faking it" that he did not have cancer anymore, and that they would not do anything for him unless he stopped "faking it".
45. Smith suffered inhumane treatment from the jail and medical staff.
46. Smith told the jail and medical staff that he was becoming paralyzed.

47. Instead of helping Smith and getting him to a hospital, the jail and medical staff refused to assist Smith with showering, bathing, basic hygiene, getting dressed, going to the bathroom, eating, getting to his bed, or provide other necessary assistance telling him to quit faking it.

48. Smith was left to drag himself on the ground in his weakened condition and wallow and soak in his own urine and feces because he was unable to make it to the bathroom on his own.

49. The frost-bite like numbness that originated in Smith's chest and spread down to his feet eventually transformed into a complete loss of feeling progressing from his feet back up to his chest causing Smith to suffer from permanent paralysis and quadriplegia from the chest down.

50. On about April 2, 2016, Smith was finally able to bond out of jail.

51. By this time, Smith was already paralyzed.

52. Smith immediately sought medical treatment and emergency transport to the hospital when he was released from jail.

53.  Smith was admitted to emergency room at Eastar Health, Muskogee, Oklahoma and then immediately transported to St. Francis Health System in Tulsa, Oklahoma.

54. Smith was admitted and remained hospitalized at St. Francis hospital for over 30 days to treat his paralysis and worsened medical condition.

55. Smith is now a quadriplegic that is permanently paralyzed from the chest down and confined to a wheel chair as a direct and proximate result of the Defendants wrongful conduct.

56. Smith has reason to believe his paralysis was caused by a spinal compression he suffered in jail caused by his cancer.

57. Further, Smith has verified with medical professionals that had he received proper medical care and treatment, and been taken to the hospital when he requested and demanded and begged, that his paralysis could have been prevented and he would not be paralyzed today.

58. Smith continues to suffer from paralysis and other medical complications caused by the Defendants' wrongful conduct.

59. Smith's medical condition has continued to deteriorate and his cancer has worsened.

60. As a result, Smith has spent a substantial part of the last year in the hospital and been gravely-ill.

61. Since Smith bonded out of the jail on April 2, 2016, he has required intensive medical care and treatment related to his cancer and quadriplegia causing him to spend a substantial part of this last year in the hospital.

62. Smith suffers daily and his quality of life has been shattered forever because of the Defendants' wrongful conduct.

63. While in jail, Defendants had notice and were made aware of Smith's obvious deteriorating medical condition, and the risk and danger to him for failing to provide adequate medical treatment was clear.

64. However, Defendants failed to provide Smith with adequate and timely medical care, protection, supervision, or assistance.

65. Defendants' deliberate indifference to the clear and presents risks to Smith's health, well-being, and safety was a direct and proximate cause of his quadriplegia, injury and damages alleged herein.

66. Defendants' deliberate indifference to Smith's serious medical needs was in furtherance of and consistent with: (a) policies which Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee promulgated, created, implemented or possess responsibility for the continued operation of; (b) policies which DHCO had responsibility for implementing and which DHCO assisted in developing; and (c) established procedures, customs and/or patterns and practices.

67. First, Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee failed to promulgate and implement adequate medical health policies responsive to the serious medical needs of the prisoners in their care. In particular, during all times pertinent, there were absolutely no guidelines in place as to the standard of care specific to inmate's medical health needs. It is common knowledge that medical illness is prevalent in our jails and prisons. It is vital that jails and prisons have policies in place establishing the standard of care for physicians, nurses and medical staff to follow in order to address serious and severe medical needs of inmates like Smith. The utter lack of guidance for medical professionals to follow at the Muskogee County Jail as to the standard of care for inmates' medical health demonstrates a failure to train, failure to supervise, and deliberate indifference toward known risks affecting inmate safety.

68. The absence of medical health guidelines and the failure to train and supervise had manifested itself in a pattern and practices of failures to: conduct appropriate medical assessments and medical history; create and implement appropriate medical health

treatment plans; promptly evaluate and transfer inmates like Smith to an appropriate medical treatment facility who are in need of urgent and serious medical care; and failure to take precautions to prevent the severe damage and injury like that of Smith. This includes previous and preventable situations similar to Smith that occur at the Muskogee County Jail.

69. Second, DHCO and the Muskogee County Sheriff's Department under the direction of Sheriff Pearson and/or Sheriff Frazier and the Bd. of County Commissioners of Muskogee have a pattern and practice of understaffing its medical treatment facility. Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners promote a policy of having too few personnel on duty at the Muskogee County Jail at one time to adequately provide treatment to inmates with serious medical health needs.

70. Third, Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee restricts DHCO to very tight budgetary restrictions, creating substantial risks to inmate safety.

71. Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee is/are, and has/have been on notice that the policies are inadequate to meet the medical health needs of prisoners like Smith. Nonetheless, Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners has failed to reform these policies.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Cruel and Unusual Punishment in Violation of the Eighth and/or Fourteenth Amendments to the Constitution of the United States (42 U.S.C. Section 1983)**

**(Defendants Sheriff Pearson, Sheriff Frazier, Bd. of County Commissioners of Muskogee, DHCO, Does I through XX)**

A. **Allegations applicable to all Defendants**

72. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 71, as though fully set forth herein.

73. Defendants knew there was a strong likelihood that Smith was in danger of serious medical harm and injury. Smith had substantial and documented medical health issues, including a prior diagnosis of Stage 4 prostate cancer (that metastasized to his spine and pelvic bone), that were made known to Defendants upon his arrival to the Muskogee County Jail and prior to him suffering from quadriplegia and paralysis.

74. Defendants failed to provide Smith with adequate medical care or adequately supervise the jail or medical staff while he was in the Muskogee County Jail.

75. Defendants' acts and/or omissions as alleged herein, including but not limited to, their failure to provide Smith with adequate and timely medical health care and/or failure to take other measures to protect him from harm and injury, constitute deliberate indifference to Smith's serious medical needs, health and safety.

76. As a direct and proximate result of Defendants' conduct, Smith experienced physical pain, severe emotional distress, mental anguish, permanent quadriplegia and paralysis, loss of quality of life, and the damages alleged herein.

77. The aforementioned acts and/or omissions of Defendants were malicious, reckless and/or accomplished with a conscious disregard of Smith's rights, thereby entitling Smith to an award of exemplary and punitive damages according to proof.

**B. Supervisor Liability and Official Capacity Liability**
**(Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee)**

78. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77, as though fully set forth herein.

79. Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee (either through actual or constructive knowledge), or it was obvious, that these policies practices, and/or customs posed substantial risks to the health and safety of inmates like Smith. Further, these Defendants failed to take reasonable steps to alleviate those risks with deliberate indifference serious medical needs of inmates, like Smith.

80. The aforementioned acts and/or omissions of Defendants' in being deliberately indifferent to Smith's serious medical needs, health and safety and violating his civil rights were the direct and proximate result of customs, practices and policies which Sheriff Pearson and/or Sheriff Frazier, and Bd. of County Commissioners of Muskogee promulgated, created, implemented and/or possessed responsibility for.

81. Such policies, customs and/or practices include but are not limited to:
    a. Sheriff Pearson and/or Sheriff Frazier's and Bd. of County Commissioners of Muskogee failure to adequately train and supervise medical staff as exemplified by his/their failure to adopt any policies or guidelines as to the standard of care specific to inmates' medical health needs;
    b. The pattern and practice of understaffing medical personnel at the Muskogee County Jail leaving inmates vulnerable and increasing the risk of harm;
    c. The tight budgetary restrictions which creates substantial risks to inmate safety;
    d. The failure to conduct appropriate medical assessments;
    e. The failure to create and implement appropriate medical health treatment plans;

  f. The failure to promptly evaluate and transfer to an appropriate medical treatment facility jail inmates who are in potential danger if they don't receive adequate medical treatment because they are suffering from a serious and severe medical condition; and

  g. The failure to take necessary precautions to care for and treat inmates experiencing serious and severe medical conditions.

82. Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee through continued encouragement, ratification, and approval of aforementioned policies, customs, and/or practices, in spite of known and obvious inadequacies and dangers, has been deliberately indifferent to serious medical needs of inmates, like Smith.

83. The aforementioned policies, customs, and/or practices were a direct and proximate cause of Smith's damages and injuries, including quadriplegia and paralysis, in that Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee failed to adequately train and supervise the medical staff and contractors at the Muskogee County Jail to prevent the occurrence of the constitutional violations suffered by Smith as the Muskogee County Jail. Sheriff Pearson and/or Sheriff Frazier and Bd. of County Commissioners of Muskogee also failed to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations suffered by Smith at the Muskogee County Jail.

84. There is an affirmative causal link and as a direct and proximate result of the aforementioned customs, policies, and/or practices, Smith suffered the injuries and damages alleged herein.

## C. Municipal Liability: (DHCO)

85. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 84, as though fully set forth herein.

86. DHCO is a person for purposes of 42 U.S.C. Section 1983.

87. At all times pertinent hereto, DHCO was acting under color of state law.

88. DHCO is charged with implementing and assisting in developing polices of the Muskogee County Sheriff's Department with respect to the medical care of inmates at the Muskogee County Jail and has shared responsibility to adequately train and supervise its employees.

89. The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Smith's serious medical needs, health and safety, and violating Smith's civil rights were the direct and proximate result of customs, policies, and/or practices of DHCO by and through its employees and/or agents.

90. Such policies included but are not limited to :
    a. DHCO's failure to adequately train and supervise medical staff as exemplified by the lack of any policies or guidelines as to the standard of care specific to inmates' medical health needs;
    b. The failure to conduct appropriate medical assessments;
    c. The failure to create and implement appropriate medical health treatment plans;
    d. The failure to promptly evaluate and transfer to an appropriate medical treatment facility jail inmates who are in potential danger if they don't receive adequate medical treatment because they are suffering from a serious and severe medical condition; and

  e. The failure to take necessary precautions to care for and treat inmates experiencing serious and severe medical conditions.

91. DHCO tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew that such conduct was unjustified and would result in violations of Smith's constitutional rights, and was deliberately indifferent to prisoners serious medical needs.

92. There is an affirmative causal link between the aforementioned custom's, policies, and/or practices and Smith's injuries and damages alleged herein.

**SECOND CLAIM FOR RELIEF**

**Violation of Article II, Section 9 and Article II Section 7 of the Constitution of the State of Oklahoma**

**(Defendants Sheriff Pearson, Sheriff Frazier, Bd. of County Commissioners of Muskogee, DHCO, Does I through XX)**

**A. Allegations applicable to all Defendants**

93. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 93, as though fully set forth herein.

94. Article II Section 9 of the Oklahoma Constitution prohibits the infliction of cruel and unusual punishment. Under the Oklahoma Constitutions' Due Process Clause, Article II Section 7, the right to be free from cruel and unusual punishment extends to pre-trial detainees like Smith who have yet to be convicted of a crime (in addition to convicted prisoners who are clearly protected under Article II Section 9).[1]

95. The Constitution of the State of Oklahoma under Article II Section 9 and Article II Section 7 provides a right of action for Smith to be free from cruel and unusual

---

[1] It is clearly established, as a matter of federal law, that pretrial detainees, who have not been convicted of a crime have a constitutional right to medical and psychiatric care under the Due Process Clause of the Fourteenth Amendment at least as protective as for convicted prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Martin v. Bd. of County Commissioners of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990).

punishment, which includes protection from the denial of needed medical care while in custody.

96. As described herein, Smith while in custody of custody of Muskogee County Sheriff's Office in the Muskogee County Jail, under the care of Sheriff Pearson and/or Frazier and Bd. of County Commissioners of Muskogee was denied necessary medical treatment.

97. Sheriff Pearson and/or Frazier, Bd. of County Commissioners of Muskogee, DHCO and Dr. or nurse DOE I-XX unknown physician or medical professional violated Smith's rights by failing to provide Smith with prompt and adequate medical assessment, evaluation, treatment and supervision despite the obvious need.

98. At all times relevant, the jail personnel and medical staff described in this Complaint, including Dr. or nurse (DOES I – XX) were acting within the scope of their employment and under the supervision of DHCO, and ultimate control of Sheriff Pearson and/or Sheriff Frazier, and Board of County Commissioners of Muskogee.

99. Defendants Sheriff Pearson and/or Sheriff Frazier, DHCO, Board of County Commissioners of Muskogee, and Dr. or nurse (DOES I- XX) denial of medical care and treatment to Smith violated Article II Sections 7 and 9 of the Constitution of the State of Oklahoma and was a direct and proximate cause of Smith's injuries and damages alleged herein.

100. Defendants Sheriff Pearson and/or Sheriff Frazier, DHCO, Board of County Commissioners of Muskogee, are vicariously liable for the violations of the Oklahoma Constitution by employees and agents acting within the scope of their employment.

## THIRD CLAIM FOR RELIEF

## Negligence

### (Defendants Sheriff Pearson, Sheriff Frazier, Bd. of County Commissioners of Muskogee, DHCO, Does I through XX)

**A. Allegations applicable to all Defendants**

101. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 100, as though fully set forth herein.

102. Defendants owed a duty to Smith, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate care and treatment.

103. Defendants breached that duty by wholly failing to provide Smith with prompt and adequate medical attention and treatment and supervision despite the obvious need.

104. Defendants' breaches of the duty of care include:

   a. The failure to adequately train and supervise medical staff as exemplified by the lack of any policies or guidelines as to the standard of care specific to inmates' medical health needs;

   b. The failure to conduct appropriate medical assessments;

   c. The failure to create and implement appropriate medical health treatment plans;

   d. The failure to promptly evaluate and transfer to an appropriate medical treatment facility jail inmates who are in potential danger if they don't receive adequate medical treatment because they are suffering from a serious and severe medical condition; and

   e. The failure to take necessary precautions to care and treat inmates experiencing serious and severe medical conditions.

105. As a direct and proximate cause of Defendants' negligence, Smith experienced physical pain, severe emotional distress, mental anguish, permanent quadriplegia and paralysis, loss of quality of life, and the damages alleged herein.

106. As a direct and proximate cause of Defendants' negligence, Smith suffered real and actual damages, including medical expenses, mental and physical pain and suffering, emotional distress, permanent disfigurement and disability, quadriplegia and paralysis, lost wages, loss of quality of life, and other damages in excess of $ 75,000.00.

107. Defendants are vicariously liable for the negligence of their employees and agents, including unknown jail and medical staff (physicians, nurses, etc.) DOES I – XX.

## DAMAGES/REMEDIES

108. Plaintiff incorporates by reference Para(s). 1-107.

109. Plaintiff seeks actual damages in excess of $ 75,000.00 including but not limited to the damages stated above, and all actual damages permitted by law, with interest accruing from date of filing suit.

110. Furthermore, Plaintiff seeks punitive or exemplary damages in excess of $ 75,000.00 as a result of the willful, wanton and gross negligence of the Defendants and their reckless disregard for the Plaintiff's rights.

111. Plaintiff also requests prejudgment interest, costs incurred, attorney's fees, and any further relief to which the court deems just and equitable.

**WHEREFORE**, PREMISES CONSIDERED, Plaintiff prays for the relief requested herein, judgment against the Defendants, and any such further relief this court deems just and proper.

Respectfully submitted,


By: _s/ Lowell G. Howe_____
Lowell G. Howe, OBA # 20075
PO Box 1972
Muskogee, OK 74402
(918) 683-5529 - Telephone
(918) 683-5528 - Facsimile

Allen W. Counts, OBA # 1945
436 Court Street, Suite A.
Muskogee, OK 74401
(918) 686-6663 - Telephone
(918) 686-6848 – Facsimile

Attorney for Plaintiffs