IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL EDWIN SMITH, individual,                )
                                                )
    Plaintiff,                                 )
                                                )
              v.                     ) No. 17-CV-90 RAW
                                                )
                                                )
BOARD OF COUNTY COMMISSIONERS,                  )
MUSKOGEE COUNTY;                                )
                                                )
ROB FRAZIER, SHERIFF OF MUSKOGEE                )
COUNTY, in his Official Capacities;             )
                                                )
TURN KEY HEALTH CLINICS, LLC;                   )
                                                )
MICHAEL S. SMITH, APRN;                         )
                                                )
DOES II through XX;                             )
                                                )
    Defendants.                                )

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

## SECOND (2nd) AMENDED COMPLAINT

**COMES NOW** the Plaintiff Michael Edwin Smith ("Plaintiff/Smith") represented by undersigned attorneys Lowell G. Howe and Allen W. Counts and for Second ("2nd") Amended Complaint and causes of action against the Defendants, alleges and states:

### JURISDICTION AND VENUE

1. The jurisdiction of this court is invoked pursuant to 28 U.S.C. Section 1343 to secure protection of and to redress deprivations of rights secured by the Eighth Amendment and Fourteenth Amendment as enforced by 42 U.S.C. Section 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

2. The jurisdiction of this court is also invoked under 28 U.S.C. Section 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the

Eighth (8th) and Fourteenth (14th) Amendments to the United States Constitution and 42 U.S.C. section 1983.

3. This court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. Section 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

4. Venue is proper under 28 USC Section 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District at the Muskogee County Jail located in Muskogee County, Oklahoma.

## PARTIES

5. Plaintiff Michael Edwin Smith ("Plaintiff/Smith") is a resident of Muskogee County, Oklahoma and these actions are based on violations of his rights under the Eighth and/or Fourteenth Amendments; Oklahoma Constitution; and Oklahoma state common law, torts, and other causes of action.  Smith was in an inmate of the Jail at all times relevant.

6. Defendant Board of County Commissioners of Muskogee County ("Board") is a political subdivision and the board and governing body responsible for funding, operation, maintenance, and the health and safety and well-being of inmates like Plaintiff while detained and housed at the Muskogee County Jail ("Jail"); the oversight and supervision of the duly elected Sheriff and the Muskogee County Sheriff's Office ("Sheriff's Office") in performing their duties; and is liable for the actions of its county personnel, agents and employees; and its policies for management and operation of the Jail.

7. Defendant Sheriff Rob Frazier ("Sheriff Frazier") in his *official capacity* and at all times relevant is head of the Sheriff's Office, and is the proper party for suit against the Sheriff's Office and those involving the Jail.  Sheriff Frazier is responsible for the

management, supervision, direction, and training of the Jail's employees, including, sheriff's deputies, jail superintendent, detention staff and support personnel, referred to simply as ("Deputies").

8. Sheriff Frazier is responsible for the management of the Jail and ensuring the safety and well-being of inmates like Plaintiff while detained and housed at the Jail; responsible for overseeing the daily operations of law enforcement and the jail superintendent and personnel responsible for management of the county jail, including the provision of appropriate medical care and treatment of Jail inmates in need of such care, pursuant to 57 O.S. Section 47; and that inmates like Plaintiff suffering from a serious medical need are provided adequate medical care and treatment.

9. In addition, Sheriff Frazier at all times relevant and pertinent to this lawsuit is responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Sheriffs Office and the Jail; including the policies, practices, procedures, and or customs that violated Plaintiff's rights as set forth in this lawsuit.

10. Defendant Turn Key Health Clinics, LLC ("Turn Key")[1] is a corporate entity doing business in Muskogee County, Oklahoma. Turn Key at all times relevant is responsible, in part, for providing medical services, care, and treatment to Plaintiff while imprisoned in the Jail.  Turn Key is additionally responsible, in part, for implementing the Jail's policies regarding medical treatment and care; and assisting in developing those policies and in training and supervising its medical staff at the jail; including APRN Michael S.

---

[1] Defendant Turn Key was previously identified as Doe Healthcare Corporation (DHCO) in original Complaint.
[2] APRN Michael S. Smith was previously identified as a Doe I-XX in original Complaint.  APRN Smith was dismissed by Plaintiff without prejudice.
[3] Plaintiff has consulted medical expert with available facts and records, but requests 30-day extension for affidavit. There was an unanticipated delay in obtaining St. Francis Tulsa's records. Parties have agreed to exchange and share

Smith, or other physicians, nurses, employees, agents and servants acting with authority within the scope of employment; referred at times herein simply as "Turn Key".  Further, APRN Michael S. Smith "(APRN Smith")[2] at all times relevant is an Advanced Practice Registered Nurse, and an employee, servant, or agent of Turn Key; acting with authority and within the scope of his employment and responsible for providing medical services, treatment, and care inmates, like Plaintiff, while imprisoned in the Jail.

11. The true names and identities of Defendants DOES II through XX are presently unknown to Plaintiff, and refer to unknown detention officers, physicians, nurses, etc. that Plaintiff alleges that each of defendants DOES II through XX are an employee, servant, or agent of the Board, Sheriff Frazier and the Sheriff's Office, or Turn Key, acting with authority and within scope of employment performing duties at the Jail.

12. Plaintiff alleges that Defendants unlawful conduct were deliberately indifferent to Smith's serious medical needs and safety; failed to provide adequate medical care to him or to take other measures to prevent and protect his serious and severe health condition from worsening; violated his civil rights; negligently and wrongfully caused his injuries; including paraplegia; a shortened life span; and untimely death; and other damages; and\or encouraged, directed, enabled and\or ordered other Defendants to engage in such conduct.

## RELEVANT FACTS

13. Plaintiff re-alleges and incorporates by reference paragraphs 1-12.

14. As detailed herein, Smith's constitutional rights, civil rights, and other federal and state tort claims asserted in this lawsuit arise from the Defendants' and Deputies and Turn

---

[2] APRN Michael S. Smith was previously identified as a Doe I-XX in original Complaint.  APRN Smith was dismissed by Plaintiff without prejudice.

Key's <u>acts, omissions, policies, and other unlawful conduct</u> ("<u>unlawful conduct</u>") while imprisoned at the Jail from March 15, 2016 to April 2, 2016.

15. Defendants' unlawful conduct directly and proximately caused or contributed to Smith being deprived and denied adequate medical care and treatment while imprisoned at the Jail when he suffered the serious and severe signs and symptoms of a cancer related spinal cord compression that caused him to become paraplegic; and suffer other serious and severe injury, shortening his life span, and other damages.

16. Specifically, Smith had a serious medical need and serious and severe medical condition and emergency while imprisoned at the Jail. The symptoms Smith suffered are more fully stated herein. Smith's symptoms obviously pointed to a substantial risk of harm that draw an inference that the Sheriff's Office, Deputies and Turn Key's unlawful conduct was negligent, reckless, in deliberate indifference of; and in violation of his constitutional and civil rights because they consciously disregarded Smith's medical emergency while an inmate.

17. The spinal cord compression caused him to become paraplegic; and to suffer other serious and severe injuries, damages, and ultimately accelerate the spread of his cancer, and shorten his life span resulting in his untimely death.

18. As a result, Smith suffered severe and serious life shattering injury and damages; including but not limited to paraplegia (that could have been prevented) and disability confining him to a wheelchair; a loss of quality and enjoyment of life; physical pain and suffering; mental anguish and terror; degradation, oppression, humiliation, and embarrassment; hospital, surgical and other medical expenses; and ultimately a shortened life span; causing his wrongful and untimely death.

19. The Defendants' unlawful conduct and treatment of Smith while imprisoned at the Jail was not only negligent, grossly deficient, and in deliberate indifference to Smith's constitutional, civil and basic rights as a human being; but also inhumane, barbaric, and so serious and severe in nature and shocking to the conscience that Smith is entitled to actual, compensatory, and exemplary damages; and attorney's fees and costs of this action.

20. As detailed herein, Smith was subjected to grossly deficient and inhumane medical treatment amounting to deliberate indifference to his serious medical needs because the Deputies and Turnkey disregarded known and substantial risks to his health and safety, causing him to suffer unnecessarily and become permanently paralyzed and paraplegic, and other injury and damages due to utterly inadequate care provided to him while an inmate; that ultimately shortened his life span causing his untimely death.

21. More specifically,

22. Smith is a single fifty (50) year old African American male.

23. Smith is a father of six (6) children and grandfather of numerous grandchildren.

24. Smith's parents are now deceased, yet he has numerous siblings, and is a loved brother, uncle, and cousin; and his support and contribution is a vital part of his family's harmony, structure and support system.

25. In about November/December 2012, Smith was diagnosed with stage four (4) cancer.

26. The cancer originated in Smith's prostate and metastasized spreading to his spine and pelvic bone.

27. Before March 15, 2016, Smith received intensive cancer care and treatment for about the last 4 years since his diagnosis, including two radiation treatments to his pelvic bone and one radiation treatment to his spine.

28. On March 15, 2016, Smith was arrested at Wal-Mart on suspicion of obtaining merchandise by false pretenses and immediately transported and taken into custody and imprisoned as a pretrial detainee at the Jail (until he secured his release on April 2, 2016).

29. At the time of Smith's arrest and imprisonment, Smith had been actively and regularly receiving medical treatment for his cancer and related conditions.

30. Smith was still mobile, physically active, able to walk on his own and had complete use and enjoyment of his legs and lower extremities; and had complete feeling from his chest downward into his feet.

31. Smith's cancer diagnosis and treatment is thoroughly documented in his medical history.

32. Smith notified the Deputies and Turn Key when he was booked into jail that he had been diagnosed and received treatment for stage four (4) cancer and of his medically necessary prescriptions and cancer medications.

33. While imprisoned, Smith suffered from a severe and serious medical condition and medical emergency ("medical emergency") that required immediate and prompt emergency care, treatment, and hospitalization.

34. The severe and serious medical emergency were the early symptoms and signs that Smith was suffering a spinal cord compression caused by his Stage 4 metastatic cancer.

35. The Deputies and Turn Key neglected, failed and refused to take Smith to the hospital and deprived him of adequate, necessary, urgent and emergency medical care and treatment when he experienced a spinal cord compression.

36. Further, the Deputies and Turn Key negligently, recklessly or purposely deprived Smith of adequate phone communications with his family or others [not imprisoned] while he was suffering and his condition continued to worsen; and of his medically necessary prescriptions and cancer medications.

37. The Deputies and Turn Key immediately had notice and knew (or should have known) of Smith's medical emergency because Smith told them at the time he was being processed that his body felt like something was seriously wrong; that he had Stage 4 cancer that had spread through his body and gone into his spine; that his doctors were still treating him for his cancer; that he needed to have his cancer medications and get someone to bring them up to the Jail for him; that he had a bad burning sensation and pain in his back that was getting worse; that he felt a tingling and numb feeling going down his back to his legs; that he thought his symptoms were being caused by his cancer; and that his condition was getting worse; and he urged them to call him an ambulance or take him to the hospital right away.

38. Also, Smith showed visible signs, symptoms and warnings that he was suffering from a serious and severe medical emergency that was immediately obvious and apparent (or should have been) to Deputies and Turn Key while he was being processed; including but not limited to facial gestures and groaning in severe and worsening pain, difficulty standing for a prolonged period due to weakness and fatigue, restricted and stiff bodily movements; collapsing and losing consciousness; and the inability to control his bladder and urinating on himself causing him severe humiliation and embarrassment.

39. Further, Smith was diagnosed by his treating physicians with Stage 4 metastatic cancer, which was sufficiently serious that he was actively and regularly receiving treatment for at the time he was imprisoned.

40. Further, Smith's medical condition and symptoms detailed herein were so obvious that even a layperson would recognize the necessity of emergency medical attention.

41. As a result, the Deputies and Turn Key immediately knew (and should have known) that Smith was suffering from a serious and severe medical emergency; and disregarded a substantial risk of harm to Smith by withholding adequate medical treatment and care, including but not limited to their refusal, denial and failure to secure Smith emergency care and hospitalization.

42. The Deputies and Turn Key disregarded Smith's plea to take him to the hospital; and instead focused on processing him and his confinement to a cell.

43. In the alternative, Smith was denied of adequate medical care and treatment because Sheriff Frazier and Turn Key was understaffed and did not have the manpower to ensure Plaintiff was denied adequate medical treatment.

44. Also, in the alternative, Sheriff Frazier has a pattern and practice of denying adequate medical care and causing injury to inmates in the Jail; and a pattern of similar constitutional violations, and other incidents similar to the constitutional deprivation of Smith.

45. Additionally, in the alternative, Turn Key has a pattern and practice of denying adequate medical care and causing injury to inmates in the Jail and other correctional institutions that it is contracted and responsible for providing medical services; and a pattern of

similar constitutional violations, and other incidents similar to the constitutional deprivation of Smith.

46. Smith's serious and severe medical condition and symptoms caused by the spinal cord compression continued to progress, evolve and worsen daily while he was imprisoned.

47. Smith' pain increased in severity, intensity and degree causing him to suffer excruciating and chronic pain and agony in his back that radiated into his lower extremities; and he suffered from a frost-bite like numbness and tingling feeling in his chest region that spread downward inferiorly into his lower extremities, legs into his feet and toes.

48. The frost-bite like numbness and tingling worsened and deteriorated into a loss of feeling in Smith's toes and feet that spread superiorly upward into Smith's legs and lower extremities and expanded further upward to his chest, causing Smith paraplegia (permanent paralysis from the chest down) confining him to a wheelchair for the rest of use life.

49. Smith's symptoms caused by the spinal cord compression continued to worsen in degree, severity and seriousness causing his medical emergency more grave and life threatening.

50. The Deputies and Turn Key had notice and knew (or should have known) of Smith's serious, severe, and worsening and deteriorating medical condition because he repeatedly warned and notified them that he was getting worse; and he begged and urged them for help and to call an ambulance or take him to the hospital because he was becoming paralyzed, and thought he was going to die; and they failed to respond and ignored his requests.

51. Further, Turn Key's denial to provide adequate medical care; or alternatively, the inadequate medical care treatment or related services it provided to Smith, breached the

standard of medical care[3], and shows Turn Key was negligent or grossly negligent in the evaluation, diagnosis and treatment of Plaintiffs medical condition and injuries; and by Turn Key failing to properly and/or timely diagnose Smith's condition, which caused irreparable and permanent injury by delaying critical treatment or treatment options at the early stage of his condition,

52. Further, the Deputies and Turn Key knew of (or should have known) of the substantial risk of harm to Smith by withholding adequate medical treatment while he suffered from this medical emergency ("now known to be and also referred to as spinal cord compression"), and repeatedly continued to disregard that known risk, causing Smith to suffer permanent paraplegia, shorten his life span, and other injury and damages.

53. The Deputies and Turn Key's unlawful conduct while Smith was imprisoned at the Jail shows that Defendants' deprived, neglected, failed, refused, and acted with deliberate indifference to the substantial risk of harm to Smith, by depriving and withholding from Smith adequate, necessary and urgent medical care and treatment that he desperately needed while he suffered from a spinal cord compression.

54. Further, Turn Key's denial to provide adequate medical care; or alternatively, the inadequate medical care treatment or related services it provided to Smith, breached the standard of medical care, and shows Turn Key was negligent or grossly negligent in the evaluation, diagnosis and treatment of Plaintiffs medical condition and injuries.

55. Deliberate indifference of the Deputies and Turn Key is further evidenced because the Deputies and Turn Key chastised and chided Smith as he suffered from this medical

---

[3]Plaintiff has consulted medical expert with available facts and records, but requests 30-day extension for affidavit. There was an unanticipated delay in obtaining St. Francis Tulsa's records. Parties have agreed to exchange and share costs of St. Francis records.  Upon receipt, expert will be submitted for review. Plaintiff is waiting on St. Francis records.

emergency, telling him he was "faking it" and that he was the "little boy who cried wolf", that they had checked with his doctors and he did not have cancer anymore, and that they would not do anything for him unless and until he stopped "faking it".

56. Further, the Deputies and Turn Key inhumanely, oppressively, maliciously, purposely, and punitively cast Smith for days into isolation and darkness in a Detox cell for so-called "faking it" (punishing Smith and chastising him that he would not be released until he decided to stop faking it, and walk again, which was impossible) in complete and reckless disregard of the known risk and substantial harm of depriving and withholding from Smith adequate, necessary and urgent medical care and treatment that he desperately needed while he suffered from a spinal cord compression.

57. Consequently, and even more tragically, the Deputies and Turn Key's abandonment and desertion of Smith caused Smith to suffer unbearably daily while imprisoned, as he writhed and screamed in excruciating pain, agony and emotional terror, as his body worsened, deteriorated and decayed into a state of permanent paraplegia, forever shattering his quality and enjoyment of life, shortening his life span, and causing other injury and damages.

58. Further, the Deputies and Turn Key subjected Smith to egregious and inhumane conduct and treatment for so-called "faking it" by isolating him in Detox unit for days (punishing Smith and chastising him that he would not be released until he decided to stop faking it, and walk again, which was impossible) and refusing to help him in his paraplegic state with basic hygienic needs, showering, bathing, going to the bathroom, eating, getting dressed or changing clothes, or other necessary assistance.

59. Further, the unlawful conduct of Turnkey as stated herein shows that Turn Key exerted influence over the Board and Sheriff Frazier, substituted its judgment for Board and Sheriff Frazier, or actively participated in the unlawful conduct that is the basis of Smith's claims.

60. Horrifically, Smith was isolated and kept alone in his cell, and left to drag himself on the ground in his paraplegic state; and because he was unable to go the bathroom on his own and no one would help him, he defecated and urinated on himself and in his clothes; and was left for days to wallow and sleep on the cold harsh concrete floor saturated and soaked in puddles of his own human excrement and waste; and unbearably suffer in his weakened, malnourished, unsanitary, toxic, and paralytic condition.

61. On about April 2, 2016, Smith was finally able to reach family and make bond; and was released from the Jail custody, and sought immediate emergency medical care and treatment from Muskogee County EMS.

62. At the time Smith obtained release, he was unable to walk on his own because he was now paralyzed and required the assistance of others.

63. Smith reeked of urine and human feces, and did the best he could to wipe and cleanse the clumps and stains of human excrement and other toxins off his foul, unsanitary and unclean, body before the ambulance arrived.

64. Smith was dumped by the staff onto a visitor's bench and remained slumped over and yearning for the arrival of the ambulance.

65. When the ambulance arrived, paramedics immediately responded and treated Smith's serious and severe medical condition and needs that had been neglected by the Deputies

and Turn Key, stabilized him, wheeled him out on a stretcher and rushed him to Eastar Health (aka St. Francis Muskogee Hospital).

66. Smith's medical condition was so serious and severe when he arrived at Eastar that after examination, emergency physicians and hospital staff diagnosed him with paraplegia, and determined that it was medically necessary that Smith obtain more advanced, specialized and intensive medical treatment; and ordered Smith be emergency transported from Eastar to St. Francis-Tulsa because of his grave and life threatening medical condition.

67.  Smith was transported by ambulance to St. Francis in Tulsa and his medical condition was so life threatening and severe that he was immediately admitted and remained hospitalized for over a month.

68. By this time, it was too late and Smith's paralysis was irreversible and permanent and he was diagnosed with paraplegia, and other related medical complications caused by the spinal cord compression and treatment he was subjected to while imprisoned.

69. Additionally, Smith has verified with medical professionals that:

70. First, the medical symptoms Smith experienced while in the custody and imprisoned in the Jail were early signs that he was suffering a spinal cord compression; and should have been appreciated, detected and treated as a medical emergency and serious medical need by the Deputies and Turn Key;

71. Second, that had Smith received emergency medical care and treatment and been taken to the hospital when he suffered from this medical emergency than more likely than not his paraplegia and related complications could have been prevented and he would not be paralyzed today; and

72. Third, that the delay in Smith obtaining emergency medical care and treatment when he suffered the spinal cord compression more likely than not accelerated the progression of his cancer; and the paraplegia and related complications caused by the delay more likely than not lead to a cascade of events and a downhill course shortening Smith's life span.

73. Since Smith secured his release from the Jail, his medical condition has continued to deteriorate and he has required intensive medical care and treatment for his paraplegia and related complications that stem from his spinal cord compression and cancer causing him to spend a substantial part of this last year hospitalized.

74. Smith's quality and enjoyment of life was shattered forever by the Defendants' unlawful conduct; and caused Smith to not only suffer from cancer with his life cut short; but also caused Smith to suffer from cancer as a paraplegic confined to a wheelchair and hospital bed with his life cut short until his untimely and accelerated death.

75. The Deputies and medical staff, including those employed by Defendants named herein including the Board, Sheriff's Office, Sheriff Frazier, Turn Key Health Clinics, LLC (Turn Key)[4] were clearly on notice of Smith's acute, serious and deteriorating medical condition.

76. However, Defendants disregarded these known and obvious risks associated with Smith's serious and deteriorating medical condition and medical emergency and spinal cord compression that caused him to suffer from paraplegia and related medical conditions, and other injury and damages.

77. Consistent with established polices, customs, patterns, and/or practices, Defendants' and the Deputies and Turn Key failed to provided Smith with adequate and timely medical treatment and care when he suffered a spinal cord compression and failed to take other

measures to protect him, in deliberate indifference to Smith's serious medical needs, health and safety.

78. Defendants' unlawful conduct stated herein shows deliberate indifference to Smith's serious medical needs because the Deputies and Turn Key knew and disregarded substantial risks to his health and safety when he suffered and experienced a spinal cord compression denied him adequate medical care and treatment.

79. Defendants' deliberate indifference to Smith's serious medical needs was in furtherance of and consistent with: (a) policies which the Board, Sheriff Frazier, and /or the Sheriff's Office promulgated, created, implemented or possess responsibility for the continued operation of; (b) policies which Turn Key had responsibility for implementing and which Turn Key assisted in developing; and (c) established procedures, customs and/or patterns and practices.

80. First, the Board, Sheriff Frazier, and/or the Sheriff's Office failed to promulgate and implement adequate medical health policies responsive to the serious medical needs of the inmates, like Smith, when in their care, custody and control.  In particular, during all times pertinent, there were absolutely no guidelines in place as to the standard of care specific to inmate's medical health needs. It is common knowledge that medical illness is prevalent in our jails and prisons. It is vital that jails and prisons have policies in place establishing the standard of care for physicians, nurses and Turn Key to follow in order to address serious and severe medical needs of inmates like Smith. The utter lack of guidance for medical professionals to follow at the Jail as to the standard of care for inmates' medical health demonstrates a failure to train, failure to supervise, and deliberate indifference toward known risks affecting inmate safety.

---

[4] Referred to

81. The absence of medical health guidelines and the failure to train and supervise had manifested itself in a pattern and practices of failures to: conduct appropriate medical assessments and medical history; create and implement appropriate medical health treatment plans; promptly evaluate and transfer inmates like Smith to an appropriate medical treatment facility who are in need of urgent and serious medical care; and failure to take precautions to prevent the severe damage and injury like that of Smith. This includes previous and preventable situations similar to Smith that occur at the Jail.

82. Second, Turn Key and the Sheriff's Office under the direction of Sheriff Frazier and the Board have a pattern and practice of understaffing its medical treatment facility. Sheriff Frazier and the Board promote a policy of having too few personnel on duty at the Jail at one time to adequately provide treatment to inmates with serious medical health needs.

83. Third, Sheriff Frazier and the Board restrict Turn Key to very tight budgetary restrictions, creating substantial risks to inmate safety.

84. Sheriff Frazier and/or the Board is/are and has/have been on notice that the policies are inadequate to meet the medical health needs of prisoners like Smith. Nonetheless, Sheriff Frazier and the Board has failed to reform these policies.

85. The unlawful conduct of the Board, Sheriff Frazier and Turn Key is in violation of Oklahoma Jail Standards; and these Defendants' directed their providers to violate Oklahoma Jail Standards.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Cruel and Unusual Punishment in Violation of the Eighth and/or Fourteenth Amendments to the Constitution of the United States
(42 U.S.C. Section 1983)**

**(Defendants Sheriff Frazier, Bd. of County Commissioners of Muskogee, Turn Key, and Does II through XX)**

**A.  Allegations applicable to all Defendants**

86. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 85, as though fully set forth herein.

87. Defendants knew there was a strong likelihood that Smith was in danger of serious medical harm and injury.  Smith had substantial and documented medical health issues, including a prior diagnosis of Stage 4 prostate cancer (that metastasized to his spine and pelvic bone), that were made known to Defendants upon his arrival to the Jail and prior to him suffering from quadriplegia and paralysis.

88. Defendants failed to provide Smith with adequate medical care or adequately supervise the Deputies or Turn Key while he was in the Jail.

89. Defendants' acts and/or omissions as alleged herein, including but not limited to, their failure to provide Smith with adequate and timely medical health care and/or failure to take other measures to protect him from harm and injury, constitute deliberate indifference to Smith's serious medical needs, health and safety.

90. As a direct and proximate result of Defendants' conduct, Smith experienced physical pain, severe emotional distress, mental anguish, permanent paralysis, and paraplegia, loss of quality of life, a shortened life span, and other injury and damages alleged herein.

91. The aforementioned acts and/or omissions of Defendants were malicious, reckless and/or accomplished with a conscious disregard of Smith's rights, thereby entitling Smith to an award of exemplary and punitive damages according to proof.

**B.  Supervisor Liability and Official Capacity Liability**

**(Sheriff Frazier and Bd. of County Commissioners of Muskogee)**

92. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 91, as though fully set forth herein.

93. Sheriff Frazier and the Board (either through actual or constructive knowledge), or it was obvious, had knowledge that their policies, practices, and/or customs posed substantial risks to the health and safety of inmates like Smith.  Further, these Defendants failed to take reasonable steps to alleviate those risks with deliberate indifference serious medical needs of inmates, like Smith.

94. The aforementioned acts and/or omissions of Defendants' in being deliberately indifferent to Smith's serious medical needs, health and safety and violating his civil rights were the direct and proximate result of customs, practices and policies which Sheriff Frazier and the Board promulgated, created, implemented and/or possessed responsibility for.

95. Such policies, customs and/or practices include but are not limited to:

    a.  Sheriff Frazier and the Board's failure to adequately train and supervise Turn Key as exemplified by his/their failure to adopt any policies or guidelines as to the standard of care specific to inmates' medical health needs;

    b.  The pattern and practice of understaffing medical personnel at the Jail leaving inmates vulnerable and increasing the risk of harm;

    c.  The tight budgetary restrictions which creates substantial risks to inmate safety;

    d.  The failure to conduct appropriate medical assessments;

    e.  The failure to create and implement appropriate medical health treatment plans;

    f.  The failure to promptly evaluate and transfer to an appropriate medical treatment facility jail inmates who are in potential danger if they don't receive adequate

medical treatment because they are suffering from a serious and severe medical condition; and

    g.  The failure to take necessary precautions to care for and treat inmates experiencing serious and severe medical conditions.

96. Sheriff Frazier and the Board through continued encouragement, ratification, and approval of aforementioned policies, customs, and/or practices, in spite of known and obvious inadequacies and dangers, has been deliberately indifferent to serious medical needs of inmates, like Smith.

97. The aforementioned policies, customs, and/or practices were a direct and proximate cause of Smith's damages and injuries (including paraplegia and related medical complications) that Sheriff Frazier and the Board failed to adequately train and supervise Turn Key and contractors at the Jail to prevent the occurrence of the constitutional violations suffered by Smith at the Jail.  Sheriff Pearson and/or Sheriff Frazier and the Board also failed to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations suffered by Smith at the Jail.

98. There is an affirmative causal link and as a direct and proximate result of the aforementioned customs, policies, and/or practices, Smith suffered the injuries and damages alleged herein.

**C.  Municipal Liability: (Turn Key)**

99. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 98, as though fully set forth herein.

100.    Turn Key is a person for purposes of 42 U.S.C. Section 1983.

101.    At all times pertinent hereto, Turn Key was acting under color of state law.

102.     Turn Key is charged with implementing and assisting in developing polices of the Sheriff's Office with respect to the medical care of inmates at the Jail and has shared responsibility to adequately train and supervise its employees.

103.     The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Smith's serious medical needs, health and safety, and violating Smith's civil rights were the direct and proximate result of customs, policies, and/or practices of Turn Key by and through its employees and/or agents.

104.     Such policies included but are not limited to:

   a.  Turn Key's failure to adequately train and supervise its medical staff as exemplified by the lack of any policies or guidelines as to the standard of care specific to inmates' medical health needs;

   b.  The failure to conduct appropriate medical assessments;

   c.  The failure to create and implement appropriate medical health treatment plans;

   d.  The failure to promptly evaluate and transfer to an appropriate medical treatment facility jail inmates who are in potential danger if they don't receive adequate medical treatment because they are suffering from a serious and severe medical condition; and

   e.  The failure to take necessary precautions to care for and treat inmates experiencing serious and severe medical conditions.

105.     Turn Key tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew that such conduct was unjustified and would result in violations of Smith's constitutional rights, and was deliberately indifferent to prisoners' serious medical needs.

106.     There is an affirmative causal link between the aforementioned custom's, policies, and/or practices and Smith's injuries and damages alleged herein.

107.     Further, Turn Key exerted influence over the Board and Sheriff Frazier, substituted its judgment for Board and Sheriff Frazier, or actively participated in the unlawful conduct that is the basis of Smith's claims.

## SECOND CLAIM FOR RELIEF

### Violation of Article II, Section 9 and Article II Section 7 of the Constitution of the State of Oklahoma

### (Defendants Sheriff Frazier, Bd. of County Commissioners of Muskogee, Turn Key, and Does II through XX)

**A. Allegations applicable to all Defendants**

108.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 107, as though fully set forth herein.

109.     Article II Section 9 of the Oklahoma Constitution prohibits the infliction of cruel and unusual punishment.  Under the Oklahoma Constitutions' Due Process Clause, Article II Section 7, the right to be free from cruel and unusual punishment extends to pre-trial detainees like Smith who have yet to be convicted of a crime (in addition to convicted prisoners who are clearly protected under Article II Section 9).[5]

110.     The Constitution of the State of Oklahoma under Article II Section 9 and Article II Section 7 provides a right of action for Smith to be free from cruel and unusual punishment, which includes protection from the denial of needed medical care while in custody.

---

[5] It is clearly established, as a matter of federal law, that pretrial detainees, who have not been convicted of a crime have a constitutional right to medical and psychiatric care under the Due Process Clause of the Fourteenth Amendment at least as protective as for convicted prisoners.  *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Martin v. Bd. of County Commissioners of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990).

111.     As described herein, Smith while in custody of custody of the Sheriff's Office in and the Jail, under the care Sheriff Frazier and the Board was denied necessary medical treatment.

112.     Sheriff Frazier, the Board, Turn Key, and/or other physicians, nurses, medical professionals (DOES II-XX) violated Smith's rights by failing to provide Smith with prompt and adequate medical assessment, evaluation, treatment and supervision despite the obvious need.

113.     At all times relevant, Deputies and Turnkey as described in this Second Amended Complaint, including sheriff's deputies, detention officers, physicians, nurses, and medical professionals (DOES II-XX) were acting within the scope of their employment and under the supervision of Turn Key, and ultimate control of Sheriff Frazier and the Board.

114.     Defendants Sheriff Frazier, Turn Key, the Board and/or their deputies, detention officers, physicians, nurses, medical professionals (DOES II-XX) denial of medical care and treatment to Smith violated Article II Sections 7 and 9 of the Constitution of the State of Oklahoma and was a direct and proximate cause of Smith's injuries and damages alleged herein.

115.     Defendants Sheriff Frazier, Turn Key, the Board, and/or other physicians, nurses, medical professionals (DOES II-XX are vicariously liable for the violations of the Oklahoma Constitution by employees and agents acting with authority and within the scope of their employment.

## THIRD CLAIM FOR RELIEF

### Negligence

### (Defendants Sheriff Frazier, Bd. of County Commissioners of Muskogee, Turn Key, and Does II through XX)

**A. Allegations applicable to all Defendants**

116.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 115, as though fully set forth herein.

117.     Defendants Board, Sheriff Frazier, and Turn Key owed a duty to Smith, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate care and treatment.

118.     Defendants Board, Sheriff Frazier, and Turn Key breached that duty by wholly failing to provide Smith with prompt and adequate medical attention and treatment and supervision despite the obvious need.

119.     Defendants' breaches of the duty of care include:

a.   The failure of the Defendants to adequately train and supervise their employees as exemplified by the lack of any policies or guidelines as to the standard of care specific to inmates' medical health needs;

b.   The failure to conduct appropriate medical assessments;

c.   The failure to create and implement appropriate medical health treatment plans;

d.   The failure to promptly evaluate and transfer to an appropriate medical treatment facility jail inmates who are in potential danger if they don't receive adequate medical treatment because they are suffering from a serious and severe medical condition; and

e.   The failure to take necessary precautions to care and treat inmates experiencing serious and severe medical conditions.

120.   As a direct and proximate cause of Defendants Board, Sheriff Frazier, and Turn Key negligence, Smith experienced physical pain, severe emotional distress, mental anguish, permanent paralysis and paraplegia, loss of quality of life, injury and other damages alleged herein.

121.   Further, Turn Key's acts, omissions, and unlawful conduct alleged herein demonstrates that Turn Key was medically negligent and breached the standard of medical care.

122.   Turn Key's denial to provide adequate medical care; or alternatively, the inadequate medical care treatment or related services it provided to Smith, Turn Key shows Turn Key was negligent or grossly negligent in the evaluation, diagnosis and treatment of Plaintiffs medical condition and injuries.

123.   As a direct and proximate result of Turn Key's negligence or gross negligence, by failing to properly and/or timely diagnose Smith's condition, which caused irreparable and permanent injury by delaying critical treatment or treatment options at the early stage of his condition, Smith suffered real and actual damages, including medical expenses, mental and physical pain and suffering, emotional distress, permanent disfigurement and disability, paraplegia and paralysis, lost wages, loss of quality of life, and other injury and damages alleged herein in excess of $ 75,000.00.

124.   Defendants are vicariously liable for the negligence of their employees and agents (deputies, detention officers, physicians, nurses, etc.) anticipated to be disclosed in discovery and currently referred to as DOES II – XX.

**DAMAGES/REMEDIES**

125.     Plaintiff incorporates by reference Para(s). 1-125.

126.     Plaintiff seeks actual damages in excess of $ 75,000.00 including but not limited to the damages stated above, and all actual damages permitted by law, with interest accruing from date of filing suit.

127.     Furthermore, Plaintiff seeks punitive or exemplary damages in excess of $ 75,000.00 as a result of the willful, wanton and gross negligence of the Defendants and their reckless disregard for the Plaintiff's rights.

128.     Plaintiff also requests prejudgment interest, costs incurred, attorney's fees, and any further relief to which the court deems just and equitable.

**WHEREFORE**, PREMISES CONSIDERED, Plaintiff prays for the relief requested herein, judgment against the Defendants, and any such further relief this court deems just and proper.

Respectfully submitted,


By:  s/ Lowell G. Howe_____
Lowell G. Howe, OBA # 20075
PO Box 1972
Muskogee, OK 74402
(918) 683-5529 - Telephone
(918) 683-5528 - Facsimile

By:  s/ Allen W. Counts
Allen W. Counts, OBA # 1945
436 Court Street, Suite A.
Muskogee, OK 74401
(918) 686-6663 - Telephone
(918) 686-6848 – Facsimile

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017 that I electronically transmitted the attached document to the court clerk using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF Registrants.

Allen W. Counts
 allenwcounts@aol.com, ajmitchum@sbcglobal.net
*Co-Counsel for Plaintiff*

Chris J. Collins
 czw@czwlaw.com, cjc@czwlaw.com, dda@czwlaw.com

Andy A. Artus
 czw@czwlaw.com, aaa@czwlaw.com, glm@czwlaw.com, jkt@czwlaw.com, sdm@czwlaw.com

Jamison C. Whitson
 jcw@czwlaw.com, cla@czwlaw.com, czw@czwlaw.com

Alison Levine    abl@czwlaw.com, cla@czwlaw.com, czw@czwlaw.com, ntc@czwlaw.com

*Attorney(s) for Defendants Bd. of County Commissioners of Muskogee; Sheriff Rob Frazier; and Sheriff Charles Pearson*

Alexander C. Vosler
avosler@johnsonhanan.com, dfrancis@johnsonhanan.com, dsidmore@johnsonhanan.com

Alexandra G. Ah Loy
 aahloy@johnsonhanan.com, alexandragahloy@gmail.com

Alison Levine
 abl@czwlaw.com, cla@czwlaw.com, czw@czwlaw.com, ntc@czwlaw.com, seg@czwlaw.com

*Attorney(s) for Defendants Turn Key Health Clinics, LLC and Michael W. Smith APRN*

s/  Lowell G. Howe_____
Lowell G. Howe