```
 1              IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF OKLAHOMA
 2


 3

   AUDREY MYERS, Personal Representative  )
 4 of the Estate of MICHAEL EDWIN SMITH,   )
   (now Deceased),                         )
 5                                         )
                        Plaintiff,         )
 6                                         )
        vs.                                ) No. 17-CV-90-RAW
 7                                         )
   1) BOARD OF COUNTY COMMISSIONERS        )
 8  of MUSKOGEE COUNTY;                    )
                                           )
 9 2) ROB FRAZIER, SHERIFF OF MUSKOGEE     )
    COUNTY, in his Official Capacities;    )
10                                         )
   3) TURN KEY HEALTH CLINICS, LLC;        )
11                                         )
   4) DOES II THROUGH XX;                  )
12                                         )
                        Defendants.        )
13

14

15                          * * * * *

16
                    TRANSCRIPT OF MOTIONS HEARING
17          BEFORE THE HONORABLE RONALD A. WHITE
                    UNITED STATES DISTRICT JUDGE
18
                         OCTOBER 9, 2018
19
                          * * * * *
20

21

22

   REPORTED BY:            KEN SIDWELL, CSR-RPR
23                         United States Court Reporter
                           P.O. Box 3411
24                         Muskogee, Oklahoma  74402

25
```

1                        A P P E A R A N C E S

2        MR. ALLEN W. COUNTS, 436 Court Street, Suite A,
   Muskogee, Oklahoma, 74401, and
3        MR. LOWELL G. HOWE, P.O. Box 1972, Muskogee, Oklahoma,
   74402, Attorneys on behalf of the Plaintiff;
4
         MR. ANDY ARTUS, Collins, Zorn & Wagner, P.C., 429
5  Northeast 50th, Second Floor, Oklahoma City, Oklahoma 73105,
   Attorney on behalf of the Defendant Muskogee County Board of
6  County Commissioners;

7        MS. ALEXANDRA G. AH LOY and MS. PAULINA THOMPSON,
   Johnson, Hanan & Vosler, 9801 North Broadway Extension,
8  Oklahoma City, Oklahoma, 73114, Attorneys on behalf of
   Defendant Turn Key Health Clinics, LLC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          OCTOBER 9, 2018 PROCEEDINGS

2          *(On the record at 10:02 a.m.)*

3          THE COURT:  All right.  We're on the record in

4    CIV-17-90, Audrey Myers versus Board of County Commissioners

5    of Muskogee County, Rob Frazier, Turn Key Health Clinics,

6    and Does II through XX, which I assume are out of the

7    picture now.  Counsel, enter their appearances, please.

8          MR. HOWE:  Your Honor, Lowell Howe for the

9    plaintiff, Audrey Myers.

10         THE COURT:  Okay.  Let's -- you all haven't been

11   here for a while.  You need to use the microphone at the

12   table.  Thank you.  Nothing like help from opposing counsel.

13   Okay.  Go ahead.

14         MR. HOWE:  Your Honor, Lowell Howe for the

15   plaintiff, Audrey Myers.

16         THE COURT:  Okay.  Mr. Counts.

17         MR. COUNTS:  Your Honor, Allen Counts for

18   plaintiff, Audrey Myers.

19         THE COURT:  Thank you.

20         MR. ARTUS:  Your Honor, Andy Artus for the Board

21   and Sheriff Frazier.

22         THE COURT:  Thank you.

23         MS. AH LOY:  Alexandra Ah Loy for Turn Key Health

24   Clinics, LLC.

25         MS. THOMPSON:  Your Honor, Paulina Thompson for

1    Turn Key Health Clinics, LLC.

2              THE COURT:  Thank you.  Okay.  You're going to

3    have to keep me honest on who represents whom.  Mr. Artus,

4    I'm pretty sure I'll keep that clear.  Mr. Howe, Mr. Counts,

5    I'll keep that clear.  Ladies, I'll -- I might get you mixed

6    up, so I'll try not to do that, okay?

7              Let's go -- there's so much floating around

8    in this case.  If I have trouble keeping up with that, too,

9    please forgive me.  First thing let's do is take the easy --

10   I hope it's the easy one first.  The motion to seal

11   exhibits, the summary judgment motion.

12             MS. AH LOY:  Your Honor, I think, at this point, I

13   can withdraw that motion as moot.  I filed the dispositive

14   motion.  I was able to do it without filing under seal.

15             THE COURT:  Okay.  Thank you.  So that will be

16   considered moot.  See, told you that was easy.

17             Okay.  I think then the only motion left

18   pending is plaintiff's motion for extraordinary -- I mean,

19   motion to extend all deadlines by 90 days because of

20   extraordinary circumstances.

21             Let's see.  I'm trying to think of the

22   primary defendant.  I think, Mr. Artus, that would be you.

23   No offense, okay?  I'm just thinking.  I'm trying to figure

24   out how I'm going to have people talk because, as you know,

25   I usually don't have one side go and then the other, I have

1    everyone at the microphone so they can -- they can chip in

2    what they want when I ask them to.  So what I usually do is

3    have lead defendant and the plaintiff, one of them get up

4    here and one get at the back podium.  Usually as far as who

5    gets up here, we draw straws and the loser has to get up at

6    the front.  But however you want to do it is fine.

7               MR. ARTUS:  Well, I think, for this motion, I will

8    let Turn Key be the lead defender of it.

9               THE COURT:  Okay.  Great.

10              MR. ARTUS:  I, quite honestly, piggy-backed on

11   their motion.  But I am prepared to say my --

12              THE COURT:  And you can stay there and do it.

13   Okay.  What's your last name?  Ah Loy.  Okay.  Thank you.

14   Come on up here.  Mr. Howe, you lead?

15              MR. HOWE:  Yes, Your Honor, I am.

16              THE COURT:  Why don't you get at the back -- back

17   podium, okay?  And then, Mr. Counts, you make sure that

18   microphone is nearby in case I need to call on you, okay?

19              MR. COUNTS:  I will, Your Honor.  Thank you.

20              THE COURT:  Mr. Artus, you know the drill, I

21   assume.  Okay.  Am I correct -- okay.  Mr. Howe -- okay.

22   There you go.  You got to have your computer for this?

23              MR. HOWE:  Well, I had some notes and made an

24   email, so it's the way I have them to bring them out.

25              THE COURT:  Okay.  Well --

1          MR. HOWE:  I did not anticipate it, Judge.

2          THE COURT:  That's fine.  Are you going to be able

3    to look at them at the podium, because we've got to keep you

4    near the microphone is the only thing.

5          MR. HOWE:  What I'll do -- excuse me.  Your Honor,

6    what I'll do when I refer to the notes is I'll have the

7    podium here, so that way I will be able to see them and the

8    Court will be able to hear me.

9          THE COURT:  Okay.  Well, you can -- if you need to

10   move the podium, you can do that.

11         MR. HOWE:  Sure.

12         THE COURT:  Whatever you want to do.  Okay.  Am I

13   correct that the only pending motion is the motion for

14   extension of deadlines by the plaintiff?

15         MR. HOWE:  Your Honor, that is correct.

16         THE COURT:  Okay.  Here's my first question, and

17   this was pointed out consistently in the defendants'

18   response, is -- Lowell, you know I have no reason at all to

19   doubt your word.  I don't have reason to doubt anyone's word

20   in this room, okay, and I don't.  Doesn't mean I can't doubt

21   the circumstances of your expert, okay?  Never met him.

22   Don't know him.  I have to agree with defendants that it's

23   sort of a weird circumstance that he drops out at the last

24   minute.

25              And as their response pointed out, you've

1    provided no medical evidence justifying Dr. Stark's request

2    to withdraw.  I guess he doesn't have to request.  He just

3    gets to.  If he does, and I don't give you more time, then

4    you're basically -- going to use the -- can't use the

5    correct colloquialism.  If I don't let you get a new one,

6    then you're done.

7              And I do appreciate the defendants implicitly

8    recognizing that, and know that I'm probably not going to

9    let that happen, so -- but I need to ask you, before I

10   let -- I'm not very happy with your expert witness right

11   now.  It has nothing to do with you.  I think it seemed that

12   you contacted people just about as quickly as you could.

13   And it seems like you all were working together before that

14   to get this stuff done, even if maybe a little late.  You

15   know, what the judge doesn't know won't hurt him, and I

16   understand that.  But where's the evidence of his medical

17   condition?

18             MR. HOWE:  Your Honor, as I sit here today, I do

19   not have any medical records.  If the Court --

20             THE COURT:  Why?

21             MR. HOWE:  -- requires me to get those medical

22   records, I notified Dr. Stark that, if I appear at the

23   hearing and the Court requests medical evidence, then I

24   would like for him to provide that to me.  I'm not sure

25   about the ability of the Court to compel that from him, but

1    I did --

2              THE COURT:  Watch me.

3              MR. HOWE:  Well, I agree -- I agree with that.

4    But what I can tell you, Your Honor, is that I have been

5    blindsided by this issue just as much as everyone here.

6              THE COURT:  Well, you're not quite that blindsided

7    because it wasn't -- it was soon after you filed your motion

8    that I ordered an expedited response, I believe.  I would

9    like to pat myself on the back and note that, by ordering

10   expedited responses, we're here at a hearing within 15 days

11   instead of just getting response on file.  I know that puts

12   a burden on both sides.  But my view is get these -- get

13   these discovery matters over with as quickly as possible,

14   that way I can hold your feet to the fire to the other

15   deadlines as well.

16              Anyway, back to what was I saying, defendants

17   pointed out over and over in their response, not a shred of

18   medical evidence.  And yet, as you sit here today, you tell

19   me you still don't have any.

20              MR. HOWE:  Your Honor, as I sit here today, I

21   still do not have any.  The only --

22              THE COURT:  Why?  I mean, it was obviously an

23   issue.

24              MR. HOWE:  It was obviously an issue with Dr.

25   Stark.  As I can notify Dr. Stark, and, Dr. Stark, I

9

1   notified him of the motions hearing that we're having today,

2   that if the Court needed to contact him to inquire, to make

3   himself available.  And I believe Dr. Stark, if the Court

4   would like to contact him, would be able to articulate what

5   the medical issue is.  Also, I believe that I could provide

6   the Court, maybe within five days or so, the medical

7   evidence.

8            Before coming to this hearing, I was not

9   exactly certain of what the Court would require.  And,

10   therefore, what I would ask is, if the Court does require

11   that I provide it with medical evidence of Dr. Stark's

12   reasoning, then I'll be happy to do that.

13          THE COURT:  Okay.  Well, this is -- I do want

14   medical evidence of his inability, not unwillingness, but

15   his inability to serve as an expert in this case by -- no,

16   we'll give you until next Tuesday, okay?

17          MR. HOWE:  Yes, Judge.

18          THE COURT:  Okay.  And that would be appreciated.

19   Of course, here's -- here's the deal, and I'm not impugning

20   Dr. Stark at all.  I know nothing about him.  If he's being

21   up front and honest and truthful about his condition, he'll

22   have no problem getting the records.  If he's being

23   dishonest and untruthful about his condition, he'll get the

24   records anyway, because --

25          MR. HOWE:  Right.

1          THE COURT:  -- I mean, that's just -- that's just

2    the way things work.  But I still want to see something, no

3    matter what.  Okay.  Now --

4          MR. HOWE:  Yes, Judge.  I apologize.  I will

5    immediately contact Dr. Stark after this hearing and tell

6    him to provide me with whatever relevant medical records

7    related to his condition that the Court has ordered, and

8    that I need to have them no later than Friday so I can have

9    them to you by Monday.

10          THE COURT:  Okay.  Ms. Ah Loy, is that

11   appropriate?

12          MS. AH LOY:  Yes, I think that's appropriate.

13          THE COURT:  Okay.  Anyone object?

14          MR. ARTUS:  No, Your Honor.

15          MS. AH LOY:  I do have a suggestion that maybe we

16   should submit this to you for in camera review instead of

17   filing them of record.

18          THE COURT:  Oh, absolutely.  Thank you.  Thank

19   you.  Yes.  Mr. Howe, do that.  Get them, review them, send

20   them to counsel, and then send them to my office.  We're not

21   going to review those.  I mean, we're going to review them.

22   We're not going to file them of record, okay?  And you can

23   assure the doctor of that.  And afterwards, they'll be

24   shredded, okay?

25          MR. HOWE:  Yes, Your Honor.

1          THE COURT:  I mean, assuming they don't become

2    exhibits at some hearing we don't even want to think about.

3    So we'll do that.

4               Now, let me ask you this, Mr. Howe -- and I'm

5    sorry you're getting grilled, but you're the one asking for

6    the relief.

7          MR. HOWE:  Your Honor, I came ready.

8          THE COURT:  Long weekend, huh?

9          MR. HOWE:  At least it's not an 8:00 o'clock

10   hearing, Your Honor.  That would have made me a little more

11   nervous.

12         THE COURT:  At least what?

13         MR. HOWE:  The 8:00 o'clock motions hearing, those

14   are the ones that make me a little nervous.  The fact that

15   you set it for 10:00 --

16         THE COURT:  I haven't had one of those for

17   probably 14 years, and I don't think it was you.

18         MR. HOWE:  Okay.  Well, Your Honor, it wasn't, but

19   I was hoping today it wasn't going to be me.

20         THE COURT:  Okay.  Well, I hope it didn't ruin

21   your Columbus Day.  Tell me you've already started the

22   process of getting another expert.

23         MR. HOWE:  Yes, I have, Your Honor.

24         THE COURT:  Very good.  How far along are you?

25         MR. HOWE:  Your Honor, the issue that we have

1    before the Court is, one, before the Court is counsels'

2    request to limit the testimony to that of a

3    hematologist-oncologist.  And I believe that, if that is the

4    case and the Court were so to do that, one, I believe that

5    there would be no point in getting an expert, because I

6    believe that the thrust of their argument is that Dr. Stark

7    wasn't qualified to give an opinion other than causation

8    anyways.

9              So, therefore, Your Honor, what I would ask

10   is, if the Court would provide me the ability to retain

11   experts to not only support my client's case in chief, but

12   also the rebuttal to the defendant's experts.  I've been

13   working diligently on that.

14             THE COURT:  Well, so you'd have to be -- have been

15   doing that even if Dr. Stark hadn't withdrawn.

16             MR. HOWE:  Your Honor, it was not until Dr. Stark

17   withdrew and the counsel brought to my attention in a

18   motion -- or in their response to my motion that there was

19   an issue with the ability of my expert to provide one or

20   both of his opinions.  One was a standard of care opinion.

21   The second one was a causation issue.  It was not until Dr.

22   Stark actually had notified me of the withdrawal and that I

23   filed my motion, that counsel then specifically stated in

24   their motion that they did not believe that Dr. Stark had

25   the ability to testify to provide the opinions that he was

1    required to in this case.

2           THE COURT:  Well, you disagree with that, don't

3    you?

4           MR. HOWE:  Your Honor, I vehemently disagree with

5    that.  However, the concern that I have, Your Honor, is

6    that, if we were to go and only hire a hematologist or

7    oncologist for my case in chief, I believe that we would not

8    gain any traction, and then I would be stuck at an issue

9    where then we have counsel arguing a *Daubert* hearing

10   alleging that my new hematologist or oncologist is not

11   qualified to give the opinion that I hired this expert to

12   substitute to.

13            So what I'm trying to bring to the Court,

14   Your Honor, is that, in this whole instance, this case has

15   been highly -- there have been highly unusual circumstances

16   throughout this case.

17          THE COURT:  Well, that's why it's -- that's why

18   it's such an old case.

19          MR. HOWE:  Right.  I --

20          THE COURT:  And that's why I'm trying to get it

21   done.

22          MR. HOWE:  I understand that, Your Honor.  And my

23   responsibility as an advocate is to, one, make sure that we

24   get it done.  But, secondly --

25          THE COURT:  Yeah, but your --

1          MR. HOWE:  -- to make sure that I can move forward

2     and present this Court with evidence that would withstand

3     any supposed issues that the defendants have alleged would

4     be insufficiency in my expert's qualifications to provide

5     the expert testimony that I'm seeking to obtain.

6          THE COURT:  Okay.  Well, let me -- let me give you

7     my rant that, unfortunately, Mr. Artus has heard before.

8     You know, the Supreme Court, within the last three or four

9     years rewrote Rule 1 about the just, speedy and inexpensive

10    resolution of every case.  And they made a big deal out of

11    it.  They really wanted judges to get involved to make that

12    happen.  And yet, at the same time, for the past 20 years,

13    their substantive rulings from the bench have done exactly

14    the opposite.  And part of this happened while I was still

15    practicing.  When *Celotex* and *Liberty Lobby* were decided,

16    suddenly there's a summary judgment motion in every case.

17    When *Twombly* and *Iqbal* were decided, suddenly there's a

18    motion to dismiss in every case.  Every case.  And then when

19    *Daubert* was decided, guess what, there's no such thing as an

20    expert disqualified or that's given a reliable opinion in

21    every case that there's an expert.  So I can't believe that

22    you're suffering unfair surprise here because, poof, what,

23    defendants are actually objecting to the qualifications of

24    my expert?  I mean, really?

25          MR. HOWE:  Judge, that is --

1           THE COURT:  Doesn't that happen in every -- don't

2    stop me.

3           MR. HOWE:  I did not mean to, Your Honor.

4           THE COURT:  Okay.  Doesn't that happen in every

5    one of your cases with an expert, except maybe an economist

6    or something like that?  I mean, doesn't it happen that they

7    challenge the qualification -- not these guys.  But in any

8    case you have, defense counsel qualified -- challenged the

9    qualifications of your expert, or his or her opinion?

10          MR. HOWE:  Judge, I understand what you are

11   saying, and in every case I do expect a challenge from the

12   defendants to the expert testimony and the qualifications.

13   In this case, I had a -- Dr. Stark was a

14   hematologist-oncologist.  He's a Yale undergrad, Harvard med

15   school --

16          THE COURT:  I read his --

17          MR. HOWE:  -- board certified internist, so --

18          THE COURT:  I read his report.

19          MR. HOWE:  Sure.  So my understanding is that, in

20   the opinions that he provided, not only did the policies of

21   the jail fell beneath the standard of care, but also the

22   causation by them not getting my client to the hospital on

23   time, that that is what -- that had they gotten him to the

24   hospital on time, that the impingement on the nerve could

25   have been prevented.  So he not only had a component of one,

1    that their conduct fell beneath the standard of care, but,

2    secondly, also as to causation.

3              Dr. Stark, I've previously -- and I provided

4    the Court -- because this was an issue that I, myself,

5    wanted to clear up and understand, I provided to the Court

6    an Appendix 1 attached to my response -- or my reply to

7    their response to this motion, and I set forth what happened

8    in two different cases.  I set forth what happened in the

9    case involving Higgins, the Estate of Bigpond vs. United

10   States of America, which was a claim for medical negligence

11   against the United States, who was a party for Indian

12   hospital services.  And I also attached the report for Dr.

13   Stark in that case.

14             In that case, it was also a federal case.

15   Dr. Stark provided me not only two opinions, but he provided

16   me one as to the standard of care, that the general

17   practitioner's acts or omissions and treatment of my client

18   were beneath the standard of care.  The second issue that I

19   addressed was a causation.  And I provided a parallel where

20   he provided me both of those opinions.  In Bigpond, there

21   was never an issue where Dr. Stark's deposition was actually

22   taken, or that we were even -- that a motion for summary

23   judgment was filed or needed to be responded to, or *Daubert*

24   issues were filed.  So, therefore, relying --

25             THE COURT:  None of them?  I'm sorry.

1          MR. HOWE:  Yes, Your Honor.

2          THE COURT:  None of those were done?

3          MR. HOWE:  The case settled.

4          THE COURT:  Okay.  So, but none -- it settled

5     before any of those have been done?

6          MR. HOWE:  That is correct, Your Honor.

7          THE COURT:  Okay.  Well, that would make sense,

8     otherwise I was thinking that everyone was out of it.  But,

9     okay.  So it makes sense.  It was settled.  Okay.  Okay.

10    Ms. Ah Loy, your opportunity to go off on him.

11         MS. AH LOY:  Okay.

12         THE COURT:  I mean that with all Christian love.

13         MS. AH LOY:  I think there may have been some

14    misinterpretation in our response brief.  We do think --

15         THE COURT:  But by me or --

16         MS. AH LOY:  By plaintiff's counsel.

17         THE COURT:  Okay.

18         MS. AH LOY:  And by no fault of plaintiff's

19    counsel.  I'm not criticizing him.  It could have been just

20    use of loose language by me.  I didn't intend to file

21    anything close to a *Daubert* argument in my response brief.

22    Am I too close to this?

23         THE COURT:  Do what?

24         MS. AH LOY:  Am I too close to this?

25         THE COURT:  Oh, god, no, you're not too close.

1     The hardest thing we have to do is get people close

2     enough.

3          MS. AH LOY:  Okay.  I haven't filed a *Daubert*

4     motion.  It is possible that we will file one, but I

5     wouldn't do that until after we've deposed an expert and

6     heard the bases of their opinions.  So I'm not going to say

7     that I'm not going to file one.  I just don't know at this

8     time.

9               The standard that we're dealing with here is

10    a failure to disclose experts in time, in effect.

11    Plaintiffs did timely disclose Dr. Stark.  His withdrawal

12    from the case is unfortunate, but untimely.  We've already

13    deposed 16 total witnesses in this case.

14          THE COURT:  Some of them on Saturday.

15          MS. AH LOY:  Yes.  Yes.  Four total on Saturday,

16    so defense counsel --

17          THE COURT:  That's working hard.  I appreciate

18    that.

19          MS. AH LOY:  We have.  And we've gone through

20    extraordinary efforts, to the credit of every attorney in

21    this case, to accomplish all the discovery we felt that we

22    needed within the time frame allowed.  So the standard is --

23    and I'm sure I don't need to rehash this to you, but a big

24    consideration is the prejudice or surprise to the

25    defendants.

1          We have cross-examined every single witness

2     deposed so far based on the limited opinion set forth in Dr.

3     Stark's expert report.  We did not anticipate that there

4     would be additional opinions or criticisms, and so we've --

5     our entire defense of this case, including how we've

6     questioned witnesses, has centered exclusively on that

7     expert report.

8          If plaintiff is allowed to go and get new

9     experts at this late stage, at the 12th hour of -- you know,

10    discovery is over -- I don't think that we would be able to

11    cure any prejudice by new -- addition of new opinions at

12    this time.

13         You know, and my strongest objection is to

14    adding new experts.  I think plaintiff --

15         THE COURT:  Right, and I've -- I mean, you're sort

16    of -- you know, and I, again, mean this amiably, not in any

17    way in degradation, but your argument's sort of, hey, judge,

18    don't let them do anything, don't give them any time, don't

19    let them -- wink, wink, nudge, nudge.  And I know you have

20    to make that argument for your client.  I know you don't

21    realistically expect me to do that.

22         The only issue is whether I let them get

23    additional experts to buttress what their original expert

24    would say.  I don't really understand -- I don't really

25    understand why, if Dr. Stark was going to testify as to

1    standard of care and causation, why additional experts are

2    necessary.  I mean -- I mean, I'm going to give you time to

3    get another expert, okay?  The only question is how many and

4    what they get to testify on.  I don't understand why, if Dr.

5    Stark was going to testify to standard of care and

6    causation, why additional experts other than one substitute

7    is necessary.  Can you go over that again, Mr. Howe?

8              MR. HOWE:  Yes, Your Honor.  I believe the answer

9    to that is, I believe that Dr. Stark may have been stating

10   opinions --

11             THE COURT:  That he --

12             MR. HOWE:  -- that to where he was overreaching.

13   I mean, essentially, that's what I believe it was, Your

14   Honor.

15             THE COURT:  Your forthcomingness is refreshing.

16   And so -- but then how do we deal with the -- what I think

17   is the certainly not irrational view of the defendants, that

18   you've taken -- that all these depositions have been taken

19   based upon Dr. Stark's possibly overreaching opinions, and

20   that sort of prejudices the defendants by having relied upon

21   that report, and then, if you have other experts come in and

22   give differing opinions, you're sort of putting all that

23   prior discovery to waste?  That was a long, involved

24   question.  I'm sorry.  If you want me to break it -- if I --

25   if we were in a deposition, you could object and say

1    compound question.

2            MR. HOWE:  Your Honor, I believe, if the Court

3    would allow me, I can respond to that concern.

4            THE COURT:  Please.  Go ahead.

5            MR. HOWE:  First of all, I believe it's important

6    to bring to the Court's attention, of the 15 depositions

7    that were taken, 11 were taken by the plaintiff.  And the

8    depositions that were taken were factual-based depositions.

9    We did not go into expert testimony --

10           THE COURT:  Well, but the observations of the

11   symptoms and condition of Mr. -- of Mr. Smith were certainly

12   at issue and would have been relied upon by defendants'

13   experts to form an opinion in preparation for the deposition

14   of Dr. Stark himself.

15           Here's what I'm trying to keep -- here's what I'm

16   really trying to keep away from, is I'm trying to keep away

17   from you having to pay for any time and expense the

18   defendants are going to have incur because of your adding

19   additional experts.  Know you're a plaintiff, know you're on

20   a contingency fee, know that's really not what you want to

21   do.

22           My second concern is not to prejudice the

23   defendants by really what -- I mean, it's obviously

24   surprise.  It was a surprise to you.  Okay.  Is gauging the

25   unfairness of the surprise to the defendants.  Okay?  So

1    that's what I'm dealing with.  Plus, I want to get the case

2    over with, and not because I just -- that's just my

3    predilection.  It's been going on for a long time.  And the

4    clients deserve to have it get over with, and, boy, I bet

5    you all would, sort of in the back of your head, like to get

6    it over with, too.  I hated those cases that I hated.

7              Anyway, that's the position I'm in.  How do I

8    do that?  Because, I mean, obviously you're going to say,

9    well, judge, I hope you -- I hope you don't make me pay

10   anything, and I don't want to do that.  I don't think that

11   would be -- I don't think that would go towards the ends of

12   justice.  It would almost be punitive.  So you all don't get

13   your hopes up, defense counsel.  But that doesn't mean I

14   wouldn't limit -- I'm afraid I'd have to get too much into

15   the weeds as to standard of care and causation, more than I

16   want to, to really figure out what you're saying, okay?

17             And I don't fault defense counsel for pushing

18   this point in their advocacy of their clients, too.  I

19   understand that.  I would certainly be doing the same thing.

20   Any thoughts --

21             MR. HOWE:  Yes.

22             THE COURT:  -- before -- I'm going -- I'm going

23   to -- I want to hear all of you out, and -- but then I'll

24   probably take a little -- a little break before I come in

25   and tell you what I'm going to do.  Go ahead, Mr. Howe.

1          MR. HOWE:  Yes, Your Honor.  First of all, I

2   believe the overriding issue in this case right now is

3   prejudice.  We want to make sure that what this Court is

4   doing, that the prejudice by granting an order denying an

5   order does not outweigh the harm or the hardship on --

6          THE COURT:  Okay.  I'm going to grant your order

7   in part at least.  I'll tell you that.

8          MR. HOWE:  So -- so I can say that, in this case,

9   Your Honor, I'm not seeking to obtain expert testimony that

10  is going to be out of the purview or the scope of any of the

11  experts that the defendants have provided or presented.

12         THE COURT:  Have you gotten their reports yet?

13         MR. HOWE:  Their reports --

14         THE COURT:  Yes.

15         MR. HOWE:  -- were actually disclosed on October

16  5th I believe.

17         THE COURT:  Okay.

18         MR. HOWE:  So we just had those, and I just -- in

19  light of preparing for this motion, I have not had a chance

20  to truly go through those.  But I can tell you that, as we

21  sit here today, Judge, without being able to get an expert

22  that's going to testify as to whether the jail policies and

23  procedures and the care provided fell beneath the standard

24  of care, essentially my case is dead.

25              With respect to an issue of causation, if I

1   can't get a neurosurgeon or another hematologist-oncologist

2   to testify as to causation, that, as a result of the delay

3   in my client's care, then my case is dead.

4            This is not something -- and the wildest part

5   about this case, Your Honor, is this is not a case where my

6   client was -- had suffered a broken finger at the jail and

7   then they didn't fix it, and then he has a crooked finger.

8   This is a case where my client is a Stage IV metastatic

9   cancer patient who is not only asking, but begging and

10  urging to be taken to the hospital.

11           And I will not have any other testimony,

12  other than as far as his symptoms, or what I believe were

13  the obvious symptoms that they should have recognized.  I'm

14  not seeking to do that.  I'm not seeking to obtain any other

15  testimony regarding the delay in -- whether delay is what

16  actually caused him to suffer this paralysis.  But when we

17  look at the gravity of the harm and the denial of due

18  process that could occur, Your Honor, my client alleges that

19  he was a Stage IV metastatic cancer patient who needed to go

20  to the hospital because he was suffering --

21           THE COURT:  Let me --

22           MR. HOWE:  -- cord compression.

23           THE COURT:  Let me stop you.  And this isn't a

24  criticism, but you brought up someone hurting their finger

25  and it being ignored and their having a bent finger and this

1    stage -- metastatic cancer that's in Stage IV.  I have

2    experience with both --

3                MR. HOWE:  Yes, Your Honor.

4                THE COURT:  -- okay?  So getting into the --

5    getting into the merits isn't going to change what I'm doing

6    one way or the other, because I'm going to apply the same

7    rules the same way whether it's a broken finger or the Stage

8    IV cancer.

9                MR. HOWE:  Yes, Your Honor.

10               THE COURT:  I have to, otherwise I'll get too

11   emotional about it, and I'm not going to do that.  So stick

12   to just the straight rules, okay?

13               MR. HOWE:  Yes, Judge.

14               THE COURT:  And so what is -- I mean, give me a

15   solution.  How -- you want 90 days.

16               MR. HOWE:  Judge --

17               THE COURT:  And you want how many -- how many new

18   experts do you want?

19               MR. HOWE:  Judge, what I'm asking is that, based

20   on the disclosures that have been provided by the

21   defendants, that I be afforded an opportunity to get an

22   expert who will be able to testify regarding the jail

23   policies and the standard of care.  And I'm also --

24               THE COURT:  Now, is this medical standard of care?

25               MR. HOWE:  Yes, Your Honor.

1           THE COURT:  Okay.  That's fine.

2           MR. HOWE:  And that I'm also seeking to obtain an

3    expert who will be able to testify to the causation element.

4    And I believe that's either going to have to be a

5    neurosurgeon, or maybe even a hematologist-oncologist like

6    in this case.  So that is what I'm asking to do, Your Honor.

7           THE COURT:  Okay.  Ms. Ah Loy.

8           MS. AH LOY:  Yes, Your Honor.

9           THE COURT:  It seems to me that what -- other than

10   time -- I'm having trouble with the 90 days.  Because if you

11   get in this position, even if it's no fault of yours, the

12   time element is going to work against you, okay?  Because

13   I'm not -- I'm not going to -- I don't even want so say

14   sanction.  I'm not going to make you pay additional fees and

15   costs, you know, incurred by the defendants because of this

16   happening.  I'm not going to do that.  Okay.

17              But, Ms. Ah Loy, what it seems like he's

18   really asking for is the -- can you hear me?  Okay.  What

19   he's really asking for is basically simply a -- I can never

20   think of a small word -- transmogrification -- no, a just

21   changing of the -- of the flow of expert reports.  Usually I

22   require plaintiffs to go first, and then defendants to

23   rebut, and then plaintiffs to reply in their reports.

24              Basically what we'd be doing here is, you've

25   given your reports, and then he's going to get to give his.

1    Okay.  Now, that's not the way I like to do it because I

2    think the plaintiff has the burden of proof.  But that's

3    really all he's asking.

4            Second thing he's asking is to have two

5    experts instead of one giving opinions that -- and I don't

6    want to overstep what I'm quoting you, Mr. Howe.  But giving

7    opinions that aren't overreaching like perhaps Dr. Stark's

8    were, which would seem maybe might be good for you guys.

9    Speculation?  Don't know for sure.  But if they're not

10   overreaching, I bet they'll be maybe not quite as strident

11   and not quite as damning, if you were.  I don't know if

12   they're damning or not.  But that's what I'm seeing.

13   Respond.

14           MS. AH LOY:  From my perspective, I think

15   plaintiff's counsel made a strategic decision to name one

16   expert only, a hematology-oncologist.  Now that he has taken

17   a step back and reviewed the depositions, he's realized the

18   burden of proof that he holds in this case, and he's

19   regretful of the consequences of his strategic decision.

20   And now he's asking for a second opportunity to completely

21   re-prosecute, re-litigate this case.  That's what I object

22   to.

23           One other thing I think I need to touch on,

24   is he's talking about policies and procedures, opinions

25   about them.  Dr. Stark's report contained no criticisms of

1  policies and procedures.  He's known since at least I filed

2  my motion to dismiss that that would be the burden he would

3  have to prove in this case, the moving force.  He's also

4  known that this case involved -- am I talking too quickly?

5  I'm sorry.

6          THE COURT:  No, you're fine.

7          MS. AH LOY:  He's also known since this case's

8  inception that it involved a delayed diagnosis of a spinal

9  cord expression.  And he should have known, based on that

10  fact alone, that a neurosurgeon would be an expert he would

11  need to consult with.  Again, I've not filed a *Daubert* as to

12  the hematology-oncologist, but I think it's fundamentally

13  unfair to the defendants to allow plaintiff a second bite of

14  the proverbial apple and to completely relitigate this case

15  because he regrets his strategic decision so far.

16          THE COURT:  Okay.  Well, what about my point that

17  I sort of made for you as devil's advocate, not that you all

18  are devils, but that the 15 depositions you've already taken

19  will, in effect -- I think you were implying this -- would,

20  in effect, be wasted if he has new experts giving new

21  opinions?  I'm not sure that's really -- I think I -- I

22  think I overstated that.

23          MS. AH LOY:  I agree with that statement.  I do

24  think --

25          THE COURT:  You agree --

1              MS. AH LOY:  I do agree because --

2              THE COURT:  You agree I overstated it?

3              MS. AH LOY:  No, no.  The prior statement.  The

4    prior statement.  I agree that those 15 depositions would be

5    essentially rendered meaningless to us, and we would have to

6    go and re-depose all of those witnesses again.  Because we

7    really were moving from -- we received the expert report and

8    we said, okay, here are what the claims are.  This is

9    actually limited from what we thought the claims initially

10   would be.  Essentially Dr. Stark, his report says that he

11   suffered decreased quality of life.  That's what his expert

12   opinion is.  And so we've been defending this case from that

13   limited opinion.

14             THE COURT:  Okay.

15             MR. ARTUS:  If I may, Your Honor?

16             THE COURT:  Certainly.  I was going to -- I was

17   going to ask Mr. Counts, but -- yeah, let me ask Mr. Counts

18   first.  Mr. Counts, anything you can add that --

19             MR. COUNTS:  Well, Your Honor --

20             THE COURT:  I mean, Mr. Howe is doing a fine job

21   and you can --

22             MR. COUNTS:  He is, Your Honor.  And I would defer

23   to him.  The only thing I would say, Your Honor, is I don't

24   see there's any prejudice at all on either side to the

25   carriage of justice.  And I think we deserve a chance to get

1   another expert in this case, Your Honor.  This is totally

2   beyond our control.  We had -- the gentleman apparently

3   cannot see.  And we cannot ask him to go forward and render

4   an opinion --

5           THE COURT:  Well, and I -- I'm sorry, I

6   interrupted.

7           MR. COUNTS:  -- problems with his eyesight.

8           THE COURT:  No, I respect you very much.  That's

9   why I don't want to interrupt you.

10           MR. COUNTS:  No, I'm -- I rely on Mr. Howe, Your

11   Honor.

12           THE COURT:  Okay.  Well, I mean, once again,

13   basically I've already informed you all I'm going to give

14   Mr. Howe some -- well, the plaintiff some relief, some extra

15   time, and some expert.  The question is how much time, how

16   much expert, and what opinions.  Go ahead, Ms. Ah Loy.

17           MS. AH LOY:  I did have one other thing to add.

18   In my -- in our joint response to plaintiff's motion, I

19   cited to a large number of, you know, Northern District of

20   Oklahoma, Western District of Oklahoma court cases where

21   they were dealing with this precise factual scenario.

22           THE COURT:  Which I like.  I like other -- trying

23   to be like the other districts.  Actually, I'd rather them

24   try to be like me, but --

25           MS. AH LOY:  Well, it's an uncommon situation, so

1      there wasn't -- you know, there wasn't a lot on point.

2              THE COURT:  Yeah.

3              MS. AH LOY:  But in those -- almost universally in

4      all of those cases, they said, look, it is unfairly

5      prejudicial.  The best way to cure it is to limit a new

6      expert to a substitution expert, and limit them to the four

7      corners of that report.

8              THE COURT:  Mr. Artus.

9              MR. ARTUS:  That's what I wanted.  The purpose of

10     allowing a substitution of an expert, assuming of course Dr.

11     Stark is unable -- medically unable to testify and not just

12     unwilling.  But the purpose to allow a substitution of an

13     expert is to put the movant, or the plaintiff here, in the

14     same position she would have been in but for the need of the

15     change of experts.  But it is not an opportunity to

16     designate a better expert.  That is where the unfairness

17     lies, and that's what the case law seems to say is, okay,

18     we're going to let you get one in, but we're going to keep

19     you -- we're going to keep you to what you had -- what you

20     had before, and that seems to balance the scales.

21                  And what I'm hearing plaintiff's counsel

22     saying is he wants to get an expert to talk about policies

23     and procedures, which was nothing Dr. Stark ever talked

24     about.  And so --

25              THE COURT:  Doesn't that go to the standard of

1  care, though?

2        MR. ARTUS:  Well, I -- well, to me, this case is

3  an official capacity case, and it's whether or not there are

4  policies and procedures that caused anyone to

5  constitutionally violate Mr. Smith's constitutional rights.

6  And, here, he's never designated anybody to talk about

7  policies and procedures about the jail or Turn Key.  All

8  he's talked about is someone who reviewed the medical

9  records and came up with a medical opinion.  And I think

10  anybody who's designated as a substitute should be just

11  that, a substitute, limited to what they had in the

12  beginning.

13        THE COURT:  Ms. Thompson?

14        MR. HOWE:  May I respond, Your Honor?

15        THE COURT:  Let me go through defense counsel,

16  then I'll let you --

17        MR. HOWE:  Oh, I apologize.

18        THE COURT:  I'm sorry, no.  Ms. Thompson, anything

19  you can add that would make my life a little more

20  complicated?

21        MS. THOMPSON:  I would echo Mr. Artus' comments is

22  that, to cure the plaintiff's predicament, what you would

23  need -- and we understand that plaintiff is in a

24  predicament.  Whether Dr. Stark is unwilling or unable, we

25  don't know at this time.  It's just what he said, that he

1    was unwilling.  But essentially plaintiff is left without an

2    expert.

3            However, to cure this predicament that the

4    plaintiff is in, all you need is a replacement expert.  Then

5    he would be placed in the same position that he was in

6    before this whole predicament occurred at the 12th hour as

7    Ms. Ah Loy has said.  This is not an opportunity for the

8    plaintiff not only to pick a different expert and to replace

9    Dr. Stark, but, as he stated, he wants to pick several

10   different experts, additional experts to testify to all of

11   these different issues.  This is not an opportunity to do

12   that.  That would essentially prejudice both defendants, the

13   sheriff's office, the board of county commissioners, and

14   Turn Key that were not prepared to this kind of change in

15   discovery and strategy on plaintiff's part.  That would put

16   both defendants in an unfair and prejudiced position.  And

17   that would, in fact, put plaintiff in a different position

18   than he was before, which would also be unfair and

19   prejudicial to the defendants.

20           And that's why we would request that the new

21   replacement expert that he would get, that his testimony

22   would be limited to the scope of the testimony of Dr. Stark.

23   Because then plaintiff's counsel and plaintiff would be in

24   the same position that he was before this predicament, and

25   he doesn't get to re-litigate the case just because this had

1    occurred.

2          THE COURT:  And that was the -- you -- at the end

3    there, you put it in a nutshell.  And let me pose it to you,

4    Mr. Howe, and this is -- this will be it as far as argument.

5    But, I mean, counsel have been gracious enough to understand

6    the predicament, and don't see them jumping up and down and

7    gnashing their teeth and pulling their hair when I say I'm

8    going to grant your motion in part by giving you some more

9    time, and by letting you have at least one substitute -- one

10   substitute expert.  But it seems like you're using the

11   predicament -- and there's nothing wrong with this, by the

12   way.  You're using the predicament to sort of not just put

13   yourself back in the position you were in, but to bolster

14   and put yourself in a better position than you were in

15   through -- I mean, you're in the predicament through no

16   fault of your own, but why should you get to be in a better

17   position because your expert put you in this predicament?

18          MR. HOWE:  Your Honor, may I reply?

19          THE COURT:  Absolutely.

20          MR. HOWE:  First of all, I'd like to refer to the

21   case that counsel cited in stating that my expert should be

22   limited to certain testimony.  I believe it's important, and

23   the Court's well aware of this, that the Court has broad

24   discretion in these discovery matters and schedule order

25   issues.  Because of the broad discretion, I believe the

1   Court is also able to articulate and distinguish whether

2   certain facts are different enough or distinguishable enough

3   to warrant a different type of relief other than that that's

4   requested by the case law that I believe they're trying to

5   hammer down to you.

6           So my first response is, in *George Martin and*

7   *Janet Martin vs. Interstate Battery System*, the facts in

8   this case, Your Honor, it was a case that was involving the

9   Martins, and they requested that their expert, Dr. Jacobson,

10  be substituted for Dr. Bosch, who was an expert that was

11  actually within the same facility and supposedly had been

12  involved with the preparation of the report that Dr.

13  Jacobson had done.  However, what's very important and I

14  believe is distinguishable in this case, Your Honor, is I'm

15  not asking, after my expert's been deposed, for a do-over.

16  That's not the case that I'm at.  And I'm not asking, after

17  I've deposed their experts, for a do-over.  This is not a

18  do-over.  This is something that I want the Court to be able

19  to recognize that this is something that, based on my prior

20  experiences with Dr. Stark, I have been blindsided.  And

21  because of that, because I'm an advocate for the plaintiff,

22  my client is prejudiced.

23          Your Honor, I'm not asking that my expert be

24  able to come up with any opinions outside the scope of

25  anything that I believe Dr. Stark was going to testify to,

1    or that their experts were going to testify to.  And I

2    believe that the issues -- yes.

3              THE COURT:  Let me stop right there.  You say,

4    even if you pick another -- more than one expert, if I allow

5    you to do that, they're not going to testify outside the

6    realm of what Dr. Stark was going to testify to?

7              MR. HOWE:  Well, Judge, that is where we have this

8    underlying issue --

9              THE COURT:  It's not underlying.  It's way up

10   here.

11             MR. HOWE:  -- where the standard of care --

12   standard of care affects the jail policies and procedures.

13   My understanding, and what I'm asking for this Court to

14   allow the plaintiff to do in these circumstances, is to --

15   because the defendant is providing an expert that's going to

16   testify as to the policies and procedures, then I'm left

17   with no alternative but to be able to at least have an

18   expert to rebut that testimony later.

19             So what I'm asking, Judge -- I believe that I

20   can get this resolved.  I believe I have an expert that I've

21   talked to who will be able to testify as to the standard of

22   care.  But the standard of care will also go to the policies

23   and procedures and how they affected the standard of care.

24   That's the one issue.

25             The second issue that I have, Your Honor, is

1    my expert that can do that that I'm still looking into -- I

2    have not retained this person -- but he is not qualified as

3    a neurosurgeon or hematologist-oncologist to provide a

4    causation opinion.  Therefore, what I'm asking is, one, to

5    be able to have an expert that can testify to the standard

6    of care and the policies and procedures, whether they were

7    adequate or inadequate and that led to the denial of medical

8    care and treatment to my client while he was a pretrial

9    detainee.  The other expert that I necessarily need to have

10   is going to go to causation, which is either -- it's going

11   to have to be a neurosurgeon or maybe a

12   hematologist-oncologist.

13           THE COURT:  So you're talking two.

14           MR. HOWE:  Yes, Your Honor.

15           THE COURT:  Okay.  Let me -- you all just hang out

16   for a little bit and it won't be long, and I'll take a

17   little break and think through this and come up with some

18   answer that will be unsatisfactory to everybody.

19           MS. AH LOY:  Your Honor, may I add just one last

20   thing?  I apologize.  I think it's important to your

21   determination to consider.

22           THE COURT:  What now?

23           MS. AH LOY:  Our witness lists were due in this

24   case over a month ago, and defendants, at that time, did

25   disclose that we were calling a neurosurgeon and a nurse, so

1    I do think that it's difficult to say that there was not

2    knowledge that a neurosurgeon would be necessary.  And the

3    rebuttal expert deadline has not yet passed in this case.

4            THE COURT:  Okay.

5            MS. AH LOY:  That's all I have.

6            THE COURT:  No, thank you.  And that was helpful.

7    I appreciate it.  Okay.  Thank you.

8                *(Off the record at 10:47 a.m.)*

9                *(Back on the record at 11:03 a.m.)*

10           THE COURT:  All right.  We're back on the record.

11   Parties -- I mean, not parties -- counsel are all present.

12                As the saying goes among judges, if you don't

13   make one decision a day you don't like, you're not doing

14   your job.

15                What's come down to it from my standpoint is

16   I've considered the factors in *Magraff vs. Lowes* and find

17   that the motion should be granted in part.  Plaintiff will

18   be given 30 days -- well, we're going to move the trial date

19   to the January docket, which is basically a 30-day

20   extension.  Plaintiff will be allowed to substitute expert

21   witnesses.  The expert witnesses cannot go out the general

22   bounds of the Dr. Stark's report.  Dr. Stark's report, to my

23   mind, talks about causation and standard of care, which

24   seems like it covers the plaintiff to the extent they won't

25   be -- it won't be substantially prejudiced.  Frankly, it

1    sort of comes down to this:  If Dr. Stark had never

2    withdrawn and plaintiff had come in and said, oh, read

3    defendants' expert reports, we need another expert, I would

4    have said no.  And that's sort of where we were.

5            I'm not -- I mean, Mr. Howe is being a

6    zealous advocate for his client.  But I'm afraid that, in

7    allowing extra experts, it would be taking a difficult and

8    unfortunate situation and using it to their advantage.  And

9    I don't -- I think that does prejudice the defendant in

10   general.  Whether specifically it does, whether there would

11   be need to re-take all those depositions, I am a little

12   skeptical of that.  But I do also think that 30 days isn't

13   going to -- isn't going to kill you.  In fact, that's what

14   defense counsel recommended in their -- in their responses

15   to the motion.

16           Here's the problem for both sides.

17   Mr. Artus, I think we've talked about this in a previous

18   case.  I don't think I did it to you.  But we're a little

19   busy right now, and January docket has 12 other civil cases

20   and I think 12 criminal cases, one of which has 23

21   defendants.  Now, there's a good chance of course, just like

22   I say to lawyers all the time when they say, well, I have a

23   case that week, judge, well, 97 percent of the time, that

24   case is going to settle, okay.  And so that's probably about

25   the same for me, too.  But I'm setting you on the January

1    docket, and it's going to be a trailing docket.  So I hate

2    that.

3              So I imagine, practically, what's going to

4    happen is you're going to have to do all your depositions of

5    your experts by video.  Maybe you were going to anyway.

6    But, so that's one.  And I apologize for that.  That's not

7    being punitive on my point.  That's just the way the ball

8    bounces.

9              Now, one other -- so I think that resolves

10   that issue.  The other issue is Dr. Stark.  You all are

11   going to get records from him justifying his inability to be

12   an expert?  I'm going to get those.  Under those

13   possibilities that there isn't substantiation there, all

14   bets are off.  And, in fact, upon application, I may allow

15   defendants to take Dr. Stark's deposition regarding his

16   withdrawal and his provision of medical records to justify

17   his withdrawal.  Let's hope it doesn't come to that.  I

18   don't want it to.  But if -- if there's some subterfuge

19   going on on Dr. Stark's part, all bets are off, okay?

20             I tried to split the baby.  I know it's not

21   the way plaintiffs would have hoped completely.  I hope it

22   gives you enough time.  I'm glad you already started looking

23   and perhaps found an expert.  But we'll put off -- we'll

24   enter a new scheduling order moving the dates commensurate

25   with a January trial date.  Okay.  Mr. Artus.

1          MR. ARTUS:  Tomorrow we have a deadline under the

2     current scheduling order for motions in limine, and I

3     understand your order to say wait on that.

4          THE COURT:  Yeah.  We'll -- we'll give you new

5     dates for everything, okay?  Sure.

6          MS. AH LOY:  And I just want -- I think you

7     answered it, but I want clarification to make sure I

8     understand.  Is plaintiff going to be allowed leave to get a

9     neurosurgeon or nurse expert?

10          THE COURT:  No.

11          MS. AH LOY:  Okay.

12          THE COURT:  No.  That is -- I mean, just like I

13     said, if he'd come in here without Dr. Stark having --

14     having withdrawn, I wouldn't let him do that, because the

15     time for that is after.  And because, as you said, that was

16     in your witness list I don't know how many weeks ago.  So I

17     am correct on that; right?  Okay.  Mr. Howe.

18          Let me compliment you all.  You all are doing

19     a great job of using the microphones.  Usually that's what

20     I'm yelling at lawyers the most about.  Go ahead, Mr.

21     Howe.

22          MR. HOWE:  Your Honor, with respect to your order,

23     Dr. Stark's report covered two issues.  It covered standard

24     of care and causation.  So with respect to the causation

25     issue, what expert am I permitted to get?  Are you saying

1    another hematologist-oncologist?

2          THE COURT:  I'm not going to advise you on on what

3    you need to do.  I'm just going to say -- and I'll even --

4    let me say I'll even allow you to get more than one expert.

5    You can get two experts, okay?  One for standard of care and

6    one for -- one for causation.  But they can't go out the

7    bounds of Dr. Stark's opinions.  Does that make sense?

8          MR. HOWE:  Yes, Your Honor.  With respect to the

9    standard of care, that also would include the policies and

10   procedures of the jail --

11         THE COURT:  Well, I think your --

12         MR. HOWE:  -- that he was testifying to, wouldn't

13   it?

14         THE COURT:  Policies and procedures were not

15   specifically mentioned in Dr. Stark's report, okay?

16         MR. HOWE:  Yes, Your Honor.

17         THE COURT:  He talked about the standard of care,

18   and that the jailers should have recognized this was a

19   problem and done something about it.  Now, as far as

20   policies and procedures, those weren't mentioned in the

21   report.  So even if none of this had ever come up, I don't

22   think I could have allowed him to testify about that.

23              Now, I don't want to practice law for you,

24   okay, and I don't want to invite more work for me.  But

25   probably, if I was in your position, I'd have your expert

1    testify to everything and everything he wants to try to

2    testify to, and then put the burden on the defendant to try

3    to limine that out.  Sorry, guys.  But that's what I'd do,

4    okay, if I was in your position.  I mean, better to ask

5    forgiveness than permission I guess.  So I'm not inviting

6    you to do that.  I think you should limit it to that report.

7    But if I have to limine it out, I will.  So, yes Mr. --

8    Ms. Ah Loy.

9            MS. AH LOY:  I have one last question.  We are

10   currently set for a settlement conference on October 25th.

11   Will that date be moved as well?

12           THE COURT:  I'd like for it not to be.  But if you

13   think it's going to be totally worthless, then I will.

14   Who's it with?

15           MR. ARTUS:  Shreder.

16           THE COURT:  Why don't you confer, and, if you want

17   to move it, file a joint motion or a single motion.  I

18   don't -- I mean, hopefully you can agree on that.  But I'd

19   rather it go ahead, but I understand if you can't.

20               So, all right.  Mr. Howe, anything further?

21           MR. HOWE:  Yes, Judge.  I just want to clarify,

22   with respect to the causation issue, that is addressed in

23   Dr. Stark's report.

24           THE COURT:  Yes, it is.

25           MR. HOWE:  You're saying that you do not want me

44

1    to go outside of that report?

2              THE COURT:  Correct.

3              MR. HOWE:  My question is, does that mean you're

4    limiting to a hematologist-oncologist, or that I can have

5    somebody who can testify to that issue that -- did you --

6    did you already clarify that, Judge?

7              MR. COUNTS:  Yeah, he said -- he's already covered

8    it.

9              THE COURT:  I'll be glad to try.  Okay.

10             MR. HOWE:  I'll confer with my counsel.

11             THE COURT:  Okay.  Thank you.  Sure.  I mean,

12   right now or at another time?

13             MR. HOWE:  Judge, counsel clarified that.  I'll

14   withdraw my question.

15             THE COURT:  Thank you.  Is there anything else

16   that I can do to you or for you?

17             MR. HOWE:  I'll go sit down.  Thank you, Your

18   Honor.

19             THE COURT:  Okay.  Ms. Ah Loy?

20             MS. AH LOY:  Aside from the settlement conference,

21   I just want to make sure I understand where it's fair for us

22   to assume, until further directed from the Court, that the

23   remaining deadlines are stricken?

24             THE COURT:  The remaining deadlines are stricken.

25   And, actually, what I just -- your question is good because

45

1    I would like to make it there be no more lay discovery.  The

2    only discovery to go on from now on is expert discovery,

3    unless you file a motion showing me good cause.  And there

4    may be.  But right now, it's just expert discovery, okay?

5              MS. AH LOY:  Thank you.

6              THE COURT:  All right.  Ms. Thompson?

7              MS. THOMPSON:  Nothing further, Your Honor.

8              THE COURT:  Mr. Artus?

9              MR. ARTUS:  That's all I have.

10             THE COURT:  Mr. Counts, I don't know if I asked

11   you.

12             MR. COUNTS:  That's all, Your Honor.  Thank you.

13             THE COURT:  Okay.  Ladies and gentlemen, thank you

14   for your excellent presentation.  This was -- this was a

15   hard one.  I'm already late for another meeting.  Don't feel

16   guilty about it, please.  Feel a little guilty.

17                  *(Off the record at 11:13 a.m.)*

18

19

20

21

22

23

24

25

1                         C E R T I F I C A T E

2              I, Ken Sidwell, Certified Shorthand Reporter for

3       the Eastern/Northern Districts of Oklahoma, do hereby

4       certify that the foregoing is a true and accurate

5       transcription of my stenographic notes and is a true record

6       of the proceedings held in the above-captioned case.

7              I further certify that I am not employed by nor

8       related to any party to this action, and that I am in no way

9       interested in the outcome of this matter.

10             In witness whereof, I have hereunto set my hand

11      this 12th day of November, 2018.

12

13                                    s/Ken Sidwell
                                      Ken Sidwell, CSR-RPR
14                                    United States Court Reporter

15

16

17

18

19

20

21

22

23

24

25